JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Acquarnetta Burks ("Burks"), administratrix of the Estate of Christine Torbert, deceased, appeals from the trial court's decision that granted the motion for summary judgment filed by defendant-appellee, Vanessa Torbert ("Torbert"). In this case, Burks filed claims against Torbert for wrongful death, assault and battery, and intentional infliction of emotional distress; all stemming from the death of Christine Torbert ("decedent"), who was the mother of both Burks and Torbert. For the reasons that follow, we affirm.
 {¶ 2} The complaint alleged that Huron Road Hospital admitted decedent on February 23, 2005 for abdominal pain, nausea, and vomiting. On February 28, 2005, the hospital released decedent with recommendations for care at a skilled nursing facility with 24-hour care. Torbert indicated the family would provide for decedent's care. On March 2, 2005, decedent was transported to University Hospitals, where she died on April 17, 2005. The complaint alleged that Torbert did not administer any medications required by decedent between the afternoon of March 1, 2005 and the morning of March 2, 2005. The complaint further alleged that Torbert initially opposed an autopsy of decedent's body, which was ultimately permitted and was then performed by the Cuyahoga County Coroner's office. The complaint generally averred that Torbert "caused the death of [decedent] through nefarious means" and advanced claims for *Page 4 
wrongful death, assault and battery, and intentional infliction of emotional distress.
 {¶ 3} Torbert moved for summary judgment on September 25, 2007. In support of her motion, Torbert included the expert report of Frank P. Miller, III, M.D. ("Dr. Miller") of the Cuyahoga County Coroner's office that was produced by Burks during discovery. Dr. Miller summarized his opinions and conclusions concerning his autopsy of decedent. According to Dr. Miller, the "cause of death was hypoxic-ischemic encephalopathy, which was due to an unknown cause. Contributing chronic medical conditions included hypertensive atherosclerotic cardiovascular disease with cardiomyopathy and diabetes mellitus. [Decedent] also had emphysema, anemia, obstructive sleep apnea, and morbid obesity, as well as a history of urinary tract infections." R. 12, Ex. B, letter dated July 21, 2006, p. 1. Dr. Miller noted Torbert's report to ECEMS paramedics that decedent had been in bed since going to sleep at 2:00 p.m. on March 1, 2005 and that decedent did not receive "any of her multiple medications from the afternoon of March 1, 2005 through the morning of March 2, 2005." Dr. Miller then opined that the "lack of medication in this chronically ill woman may well have initiated the events leading up to her brain damage." However, Dr. Miller further opined that decedent's "chronic diseases including emphysema, sleep apnea, obesity, congestive heart failure, and hypoglycemia suggest that the brain damage is from natural disease and caused a natural death." Id., p. 2. Although Dr. Miller *Page 5 
stated he could not "exclude foul play," he opined that "the manner of death is undetermined because the underlying cause of [decedent's] brain injury is unknown. Although the precipitating event is probably natural, this may be an accidental or homicidal death." Id.
 {¶ 4} Torbert also submitted decedent's death certificate, which identified the cause of death as "[h]ypoxic-ischemic encephalopathy, etiology undetermined." R. 12, Ex. C. The death certificate noted other significant conditions that contributed to death as "hypertensive atherosclerotic cardiovascular disease with cardiomyopathy. Diabetes mellitus." Id. The death certificate provided that the "[circumstances surrounding the hypoxic-encephalopathy are unknown" and reflected that the manner of death "could not be determined." Id. The corner's verdict and autopsy report, dated May 11, 2005, were submitted and also indicated that the cause of death was hypoxic-ischemic encephalopathy, and the manner of death was "undetermined." R. 12, Ex. D E. In addition, Torbert submitted the judgment entry dated October 4, 2005 of the Probate Division of Cuyahoga County Court of Common Pleas that found, after hearing and receiving evidence, that decedent "died from natural causes on or about April 17, 2005." R. 12, Ex. F.
 {¶ 5} On October 29, 2007, Burks opposed Torbert's motion for summary judgment. In support, Burks relied on the opinions of Dr. Miller contained in his July 21, 2006 correspondence referred to above. Burks also submitted an *Page 6 
affidavit wherein she averred, among other things, that she and her other siblings "suspect [their] seventh sibling, [Torbert], of foul play in the injury and ultimate death of [their] mother." R.13, Ex. B. Burks then detailed the basis of their suspicions, including that Torbert lobbied to have the doctors "pull the plug" on their mother and that Torbert wanted decedent cremated without an autopsy. Torbert filed a reply in support of her summary judgment motion on November 1, 2007. The trial court held Torbert's motion in abeyance and allotted Burks additional time to provide a supplement response. R. 15.
 {¶ 6} On January 11, 2008, Burks filed her supplemental response to Torbert's motion for summary judgment. Again, Burks relied on the opinions of Dr. Miller and primarily the fact that he could not exclude foul play. Burks further submitted an affidavit from Dr. Miller dated January 9, 2008. R. 17, Ex. A. Therein, Dr. Miller averred that Torbert was "in charge of caring for [decedent] upon her release from Huron Road Hospital on February 28th, 2005." Dr. Miller further indicated that "[t]he delay in performing the autopsy meant there were tests and observations which were affected by the decomposition of the body, which meant that questions as to the cause of death could not be answered with the same certainty as might have been possible had the autopsy been performed shortly after [decedent] died. The manner ofdeath listed in the autopsy is `Undetermined'." (Emphasis added.) Id. *Page 7 
 {¶ 7} In addition, Burks submitted the affidavit of Deon Torbert, Torbert's brother. R. 17, Ex. C. He averred that Torbert lived with decedent and had the only key to the apartment. He, too, indicated that Torbert wanted to "pull the plug" on decedent, who was in a coma. Id. He also stated that Torbert wanted the body cremated without an autopsy. He stated that "the autopsy listed the cause of death as `undetermined.'"[1] He "suspected [Torbert] had something to do with [decedent's] death." Id.
 {¶ 8} On January 22, 2008, the trial court granted Torbert's motion for summary judgment, from which Burks now appeals and presents the following assignment of error for our review:
 {¶ 9} "I. The trial court erred in granting summary judgment to the defendant."
 {¶ 10} An appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if, as a matter of law, no genuine issues exist for trial.Brewer v. Cleveland City Schools (1997), 122 Ohio App.3d 378, citingDupler v. Mansfield Journal (1980), 64 Ohio St.2d 116, 119-120. *Page 8 
 {¶ 11} Summary judgment is appropriate where it appears that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v.Willis Day Warehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ. R. 56(C).
 {¶ 12} The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the nonmovant
 {¶ 13} has no evidence to support his claims. Dresher v. Burt,75 Ohio St.3d 280, 293, 1996-Ohio-107; Civ. R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.
 {¶ 14} Burks advanced three claims: wrongful death, assault and battery, and intentional infliction of emotional distress. Wrongful death and intentional infliction both require plaintiff to prove proximate causation as a necessary element of the prima facie case.Chaney v. Eason (Dec. 24, 1997), Cuyahoga App. No. 72142, citing R.C. 2125.01 ("In order to establish a cause of action for wrongful death, a plaintiff must prove by a preponderance of the evidence the following *** (3) a *Page 9 
wrongful act, neglect or default of the defendant is the proximate cause of the death ***."); see, also, Jacob v. Fadel, Cuyahoga App. No. 86920,2006-Ohio-5003, ¶ 13 ("[t]he elements of a prima facie case of intentional infliction of emotional distress are: *** (c) that the actor's actions were the proximate cause of the plaintiff's psychic injury ***.")
 {¶ 15} Torbert asserted that Burks lacked evidence to create a genuine issue of material fact on the issue of proximate cause.
 {¶ 16} Proximate cause is "that which immediately precedes and produces the effect, as distinguished from a remote, mediate, or predisposing cause; that from
 {¶ 17} which the fact might be expected to follow without the concurrence of any unusual circumstance; that without which the accident would not have happened, and from which the injury or a like injury might have been anticipated." Jeffers v. Olexo (1989),43 Ohio St.3d 140, 143, quoting Corrigan v. E.W. Bohren Transport Co. (C.A.6, 1968),408 F.2d 301, 303, certiorari denied (1969), 393 U.S. 1088,89 S.Ct. 880, 21 L.Ed.2d 782.
 {¶ 18} Burks relies on the opinions of Dr. Miller. However, even construing his findings and opinions in a light most favorable to Burks, they do not create a genuine issue of material fact. Although he does not state his opinion within the requisite degree of medical certainty, he finds the death was probably the result of natural causes. Further, the manner of death, which could not even be determined by medical professionals, is certainly beyond the knowledge of lay persons and requires *Page 10 
the testimony of an expert witness.[2] Evid. R. 702. Consequently, Burks is left with utter speculation as to the manner of decedent's death, which is insufficient to overcome Torbert's motion for summary judgment. Without evidence to create a triable issue on proximate cause, the trial court properly granted summary judgment on the claims for wrongful death and intentional infliction of emotional distress.
 {¶ 19} The claim for intentional infliction of emotional distress also required proof "that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it." Fadel, supra, ¶ 13 (a necessary element of a prima facie case of intentional infliction of emotional distress is "that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it.")
 {¶ 20} A plaintiff may prove severe and debilitating emotional injury through the testimony of an expert or lay witnesses acquainted with the plaintiff who have observed significant changes in the emotional or habitual makeup of the plaintiff. See Knief v. Minnich (1995),103 Ohio App.3d 103 and Uebelacker v. Cincorn Systems, Inc. (1988),48 Ohio App.3d 268, 276. A self-serving affidavit, however, is insufficient to overcome summary judgment as to this element of intentional infliction *Page 11 
of emotional distress. Fadel, supra ¶ 15, citing, Motley v. Flowers Versagi Court Reporters, Inc. (Dec. 11, 1997), Cuyahoga App. No. 72069.
 {¶ 21} Plaintiff failed to present evidence of a genuine issue of material fact on this element. Burks presented no evidence to substantiate her claim of severe and debilitating emotional injury. The only evidence offered in this regard was contained in the affidavit of Deon Torbert where he averred that he and his siblings "were very close with [their] mother and her death has caused [them] immense emotional harm. [He] still get[s] very worked up thinking about [their] mother and immediately after her death and for quite awhile after that, [he] could not sleep, [he] was constantly angry and [he] suffered bouts of depression." R. 17, Ex. C.
 {¶ 22} The remaining claims were for civil assault and battery. "Civil assault is the `intentional offer or attempt, without authority or consent, to harm or offensively touch another that reasonably places the other in fear of such contact.' Battery involves the `intentional, unconsented, contact with another.'" (Internal citations omitted.)Batchelder v. Young, Trumbull App. No. 2005-T-0150, 2006-Ohio-6097, ¶ 23, fn. 3. There is no evidence in the record to support these claims against Torbert.
 {¶ 23} The trial court properly granted summary judgment in favor of Torbert on all of Burks's claims.
 {¶ 24} Appellant's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant her costs herein taxed. *Page 12 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, P.J., and CHRISTINE T. McMONAGLE, J., CONCUR.
[1] The autopsy did identify the cause of death but listed the manner of death as "undetermined."
[2] Generally, a plaintiff must present expert testimony on the issue of proximate cause when the causal connection between the negligence and the injury is beyond the common knowledge and understanding of the jury.Berdyck v. Shinde, 66 Ohio St.3d 573, 1993Ohio-183, 613 N.E.2d 1014. However, expert opinion testimony is not necessary when the causal relationship is a matter of common knowledge. Driscoll v. Gruss (Jan. 28, 1999), Cuyahoga App. No. 73815, citing from Wood v. Elzoheary
(1983), 11 Ohio App.3d 27, 29, 11 Ohio B. 40, 462 N.E.2d 1243."Pravitskyy v. Halczysak, Cuyahoga App. No. 82295, 2003-Ohio-7057, ¶ 39. *Page 1