[Cite as *Cartwright v. Beverly Hills Floors*, 2013-Ohio-2266.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| JAMES CARTWRIGHT, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| CROSS-APPELLANT, | ) | CASE NO. 11 MA 109 |
| | ) | |
| V. | ) | OPINION |
| | ) | |
| BEVERLY HILLS FLOORS, INC., et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS | ) | |
| CROSS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Mahoning County
                             Court #5 of Mahoning County, Ohio
                             Case No. 11CV147CNF

JUDGMENT:                    Affirmed in part
                             Reversed in part

APPEARANCES:
For Plaintiff-Appellee        Attorney Timothy P. Maloney
Cross-Appellant               406 Gardenview Drive
                             Youngstown, Ohio 44512-6509

For Defendants-Appellants     Attorney Mark Hanni
Cross-Appellees               839 Southwestern Run
                             Youngstown, Ohio 44514

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: May 30, 2013

DONOFRIO, J.

{¶1} Plaintiff/cross-appellant, James Cartwright, appeals from a Mahoning County Court #5 judgment finding in his favor on his claim that defendants/cross-appellees, Beverly Hills Floors, Inc. and George Aron, performed work in an unworkmanlike manner but denying his claims for treble damages and attorney's fees.

{¶2} Cartwright hired Michael's Cabinets in 2010 to remodel his kitchen. Beverly Hills Floors, Inc. (BHF) was a subcontractor for Michael's Cabinets. Aron is BHF's president. As the subcontractor, BHF installed the hardwood floors in Cartwright's kitchen. There were no problems with the kitchen floor.

{¶3} When BHF's workers arrived to install the kitchen floor, the kitchen was empty except for Cartwright's refrigerator. The workers attempted to move the refrigerator into the dining room. In doing so, they damaged the dining room hardwood floor.

{¶4} Cartwright complained to Aron about the damage to the dining room floor. Aron attempted to fix the floor by sanding and staining the damaged area. The floor damage was still apparent. Aron once again attempted to sand and stain the floor. According to Cartwright, the damage to the floor was still noticeable. According to Aron, Cartwright did not complain any further about the dining room floor.

{¶5} While Aron was at Cartwright's home, the two discussed having BHF install ceramic tile in the hallway. Aron made a proposal to Cartwright. They reached a verbal agreement on this job. Cartwright gave Aron a $750 deposit for the tile. After the kitchen floor was complete and Aron had twice attempted to fix the dining room floor, BHF employees showed up at Cartwright's home with the tile. Cartwright told them he did not want it and did not want BHF to do any more work at his house. There were no further contacts between Cartwright and Aron.

{¶6} Cartwright filed a complaint against BHF and Aron alleging "deceptive and/or unconscionable claims under O.R.C. 1345.01 et seq., including claims for treble damages, injunctive relief and attorneys [sic.] fees." BHF filed a counterclaim against Cartwright alleging breach of contract, damages stemming from additional

work and tile storage, and requesting attorney fees.

**{¶7}** The matter proceeded to a bench trial where the court heard testimony from Cartwright and Aron and accepted Cartwright's exhibits. The court granted judgment in favor of Cartwright in the amount of $1,715.00 "representing a return of the $750.00 and the $965.00 cost of repair," plus interest and court costs. The court denied BHF's counterclaims.

**{¶8}** BHF filed a timely notice of appeal on June 21, 2011. Cartwright then filed a timely notice of cross-appeal.

**{¶9}** This court sua sponte dismissed the appeal and cross-appeal on November 20, 2011, when no briefs had been filed. On Cartwright's motion for reconsideration, we later reinstated his cross-appeal.

**{¶10}** On January 27, 2012, this court issued a limited remand to the trial court for clarification of its judgment entry. We pointed out that the complaint included a claim for treble damages and attorney fees, yet these issues were not addressed in the trial court's judgment entry.

**{¶11}** Pursuant to this court's remand, the trial court put on a new judgment entry stating that in order for Cartwright to have prevailed on his treble damages claim and request for attorney fees under R.C. 1345.09(F)(2), he was required to prove that BHF knowingly committed a deceptive practice. The court found that while the work performed was not completed in a workmanlike manner, the work was not due to deceptive practices. The court then denied both parties' claims for attorney fees.

**{¶12}** Cartwright now raises four assignments of error, the first of which states:

> THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AGAINST THE SUBSTANTIAL RIGHTS OF PLAINTIFF-APPELLEE AND CROSS-APPELLANT JAMES CARTWRIGHT TO A FULL AND FAIR JUDGMENT AND ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FINDING THAT WHILE DEFENDANTS-

APPELLANTS AND CROSS-APPELLEES BEVERLY HILLS FLOORS, INC., AND ITS PRESIDENT, GEORGE ARON, FAILED TO COMPLETE ITS WORK AT THE RESIDENCE OF CARTWRIGHT IN A "WORKMANLIKE MANNER," THE WORK DEFENDANTS DID PERFORM WAS NOT DUE TO DECEPTIVE ACTS OR PRACTICES.

**{¶13}** In its judgment entry the trial court found, "while the work performed may not have been completed in a 'workmanlike manner,' the Court finds that the work performed was not due to deceptive practices."

**{¶14}** Cartwright argues that the trial court erred in finding that BHF performed the work in an un-workmanlike manner but failed to find that BHF committed deceptive acts. He claims that failing to perform work in a workmanlike manner and failing to correct the deficiencies are deceptive acts or practices. In support, Cartwright cites to several cases from the Consumer Protection Section of the Ohio Attorney General's Office. He claims that based on BHF's deceptive acts and practices, he was entitled to an award of three times his actual damages of $1,715.00 and that he is entitled to an additional award for noneconomic damages.

**{¶15}** The Ohio Consumer Sales Protection Act (OCSPA) prohibits suppliers in consumer transactions from engaging in unfair or deceptive acts or practices. *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29, 548 N.E.2d 933 (1990). The consumer is not required to prove intent to deceive on the supplier's part. *Wasserman v. Home Corp.*, 8th Dist. No. 90915, 2008-Ohio-5477, ¶12. Instead, if the supplier does or says something that has the likelihood of inducing in the consumer's mind a belief that is not in accord with the facts, then that act or statement is deceptive. *Frey v. Vin Devers, Inc.*, 80 Ohio App.3d 1, 6, 608 N.E.2d 796 (6th Dist.1992).

**{¶16}** This assignment of error is best addressed in two parts for ease of discussion.

1. The work in the kitchen and repair in the dining room

**{¶17}** While a breach of contract or breach of warranty can constitute an

OCSPA violation, not every breach constitutes a violation. *Wasserman*, at ¶13. When a supplier knowingly commits a breach, the breach is likely also an unfair or deceptive act. *Nelson v. Pieratt*, 12th Dist. No. CA2011-02-011, 2012-Ohio-2568, ¶14. But a contract can be breached in numerous ways that do not involve deception. *Toth v. Spitzer*, 2d Dist. No. 17178, 1998 WL 879475 (Dec. 18, 1998). The trier of fact may find that work was imperfectly performed and resulted in the breach of an express warranty and still find that the supplier did not engage in an unfair or deceptive act that violated the OCSPA. *Wasserman,* at ¶16.

{¶18} At trial, Cartwright testified that Aron led him to believe that his employees would be equipped to move anything that was in the way, including his refrigerator. (Tr. 6-7). It was in the course of moving the refrigerator into the dining room that the workers damaged the dining room hardwood floor. (Tr. 7). Cartwright stated that Aron made two "halfhearted" attempts to repair the floor. (Tr. 8). Cartwright testified the BHF floor installer used a palm sander and varnish to attempt to fix the floor. (Tr. 8). When the color did not match, the worker used another coat of varnish. (Tr. 8). But Cartwright stated that the color still did not match and the floor was scarred from the sander. (Tr. 8). He also testified there were delays in getting the wood for the kitchen floor and the wood was not allowed to "season," as he thought was necessary. (Tr. 8-9). But Cartwright did testify that the kitchen floor was completed and he was satisfied with it. (Tr. 24, 30).

{¶19} Aron testified that he was led to believe that Cartwright's kitchen would be empty and his men would only have to install the floor. (Tr. 42-43). However, when his men arrived at the job, the refrigerator was in the kitchen. (Tr. 43). He stated his men were not equipped to move the refrigerator and should not have attempted to do so. (Tr. 43). Aron stated his men made a couple of attempts to fix the damaged floor. (Tr. 43). He was under the impression that Cartwright was satisfied with the "touch-up" because Cartwright did not mention it to him again. (Tr. 43-44).

{¶20} This was the extent of the testimony as to whether BHF's work was

performed in a workmanlike manner. There was no evidence as to an unfair or deceptive practice. Given this evidence, and the above cited case law, the trial court acted appropriately in determining that while BHF did not perform its work in a workmanlike manner, it did not act unfairly or deceptively. Thus, the court properly awarded Cartwright the cost to repair his dining room floor.

2. The proposed work in the hallway

**{¶21}** This part of Cartwright's claim applies to the proposed work BHF was to perform in installing tile in Cartwright's hall. The relevant testimony was as follows.

**{¶22}** Cartwright testified that while Aron was at his home measuring the kitchen, he asked Cartwright if he could give him a proposal to install tile in the hallway. (Tr. 6). Aron provided Cartwright two written proposals dated August 5, 2010, for the tile installation, one not including a utility room and the second with the utility room included. (Tr. 9, 11, 14; Pt. Exs. 2, 3). Cartwright gave Aron a check for $750.00 as a deposit for the tile work on August 21, 2010. (Tr. 19; Pt. Ex. 3). He stated that Aron never gave him a receipt for his deposit. (Tr. 49-50). Cartwright stated that on December 7, 2010, he called Aron and left him a message that he did not want BHF to install the tile in the hallway. (Tr. 10, 20). But on January 15, 2011, Cartwright stated, a BHF employee showed up at his house, unannounced, with the tile. (Tr. 21). Cartwright refused the tile and told the man to take it back. (Tr. 21-22).

**{¶23}** Aron claimed that Cartwright signed a contract for the tile work, but stated that he did not have a copy of it. (Tr. 35). Aron also stated that he did not know if he gave Cartwright a receipt for the $750.00 deposit. (Tr. 36-37).

**{¶24}** The proposals Aron provided Cartwright were labeled "PROPOSALS." They have the name "Beverly Hills Floors Inc." at the top as well as BHF's phone number and city. They are dated August 5, 2010. The name and address section list "Michaels Cabinets" as the name and "Cartwright Job" as the address. On the proposal that included the utility room, there is a notation that a $750.00 deposit was received on August 21, 2010, and "#1029" is written below the date.

**{¶25}** R.C. 1345.23 provides in part:

(A) Every home solicitation sale shall be evidenced by a written agreement or offer to purchase in the same language as that principally used in the oral sales presentation and shall contain the name and address of the seller. The seller shall present the writing to the buyer and obtain the buyer's signature to it. The writing shall state the date on which the buyer actually signs. The seller shall leave with the buyer a copy of the writing which has been signed by the seller and complies with division (B) of this section.

(B) In connection with every home solicitation sale:

(1) The following statement shall appear clearly and conspicuously on the copy of the contract left with the buyer in bold-face type of the minimum size of ten points, in substantially the following form and in immediate proximity to the space reserved in the contract for the signature of the buyer: "You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation for an explanation of this right."

(2) A completed form, in duplicate, captioned "notice of cancellation", shall be attached to the contract signed by the buyer and be easily detachable, and shall contain in ten-point, bold-face type, the following information and statements in the same language as that used in the contract: [Notice of Cancellation details].

**{¶26}** Based on the evidence, BHF failed to comply with R.C. 1345.23(A) and (B). The proposals failed to include the seller's address and the buyer's signature in violation of R.C. 1345.23(A). It also failed to include the required cancellation statement and the required notice of cancellation in violation of R.C. 1345.23(B).

**{¶27}** R.C. 1345.28 provides: "Failure to comply with sections 1345.21 to 1345.27 of the Revised Code constitutes a deceptive act or practice in connection with a consumer transaction in violation of section 1345.02 of the Revised Code."

**{¶28}** Thus, by violating R.C. 1345.23(A) and (B), BHF engaged in a deceptive act or practice as defined by R.C. 1345.28.

**{¶29}** Cartwright also contends that BHF violated Ohio Admin.Code 109:4-3-05 and Ohio Admin.Code 109:4-3-07.

**{¶30}** Ohio Admin.Code 109:4-3-05(A) provides that it shall be a deceptive act or practice in connection with a consumer transaction involving the performance of a service to exceed $25.00 and where there has been face-to-face contact between the consumer and the supplier, "prior to the commencement of the repair or service for a supplier to: [fail to provide a form regarding estimates.]"

**{¶31}** In this case, however, BHF never commenced the service of installing the tile. The commencement of service begins when the supplier arrives at the consumer's residence. Ohio Admin.Code 109:4-3-05(B). Cartwright testified that when the BHF employee attempted to deliver the tile to his house, Cartwright sent him away. Thus, BHF did not violate Ohio Admin.Code 109:4-3-05.

**{¶32}** Ohio Admin.Code 109:4-3-07 provides it is a deceptive act or practice for a supplier to accept a deposit unless certain conditions are met. Those conditions include providing the consumer with a dated, written receipt containing, among other things, a description of the goods or services to which the deposit applies, the amount of the deposit, and whether the deposit is refundable. Ohio Admin.Code 109:4-3-07(B).

**{¶33}** In this case, Cartwright testified that Aron never gave him a receipt for his deposit, let alone a receipt detailing the information required by Ohio Admin.Code 109:4-3-07(B). Thus, BHF committed a deceptive act or practice in accepting Cartwright's deposit without providing the required receipt.

**{¶34}** In sum, the trial court correctly found that the work BHF performed in the kitchen, while not performed in a workmanlike manner, did not amount to a deceptive or unfair act or practice. But the trial court incorrectly failed to consider that BHF committed other deceptive or unfair acts or practices in its dealing with Cartwright regarding the tile work to be done in his hallway.

**{¶35}** Accordingly, Cartwright's first assignment of error has merit in part.

**{¶36}** Cartwright's second assignment of error states:

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AGAINST THE SUBSTANTIAL RIGHTS OF PLAINTIFF-APPELLEE AND CROSS-APPELLANT JAMES CARTWRIGHT TO A FAIR AND FULL JUDGMENT AND COMMITTED ERROR AS A MATTER OF LAW AND CLEARLY ABUSED ITS DISCRETION IN DENYING HIM TREBLE (TRIPLE) DAMAGES, AND PRESUMABLY, HIS NONECONOMIC DAMAGES NOT EXCEEDING $5,000.00 AS AUTHORIZED UNDER O.R.C. §1345.09(B), BY IMPERMISSIBLY LINKING HIS TREBLE DAMAGES TO O.R.C. §1345.09(F)'S LIMITATION UPON AN AWARD OF ATTORNEY FEES.

**{¶37}** The trial court's judgment states that in order for Cartwright to prevail on his claim for treble damages, he must prove that BHF knowingly committed an act or practice that violated R.C. Chapter 1345. Cartwright claims this finding is incorrect. He asserts that the trial court impermissibly linked Cartwright's potential treble damages to an award of attorney fees.

**{¶38}** In support of his argument here, Cartwright cites to R.C. 1345.09(B) and (F)(2), which provide:

**{¶39}** For a violation of Chapter 1345. of the Revised Code, a consumer has a cause of action and is entitled to relief as follows:

* * *

(B) Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02, 1345.03, or 1345.031 of

the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, * * * three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater, plus an amount not exceeding five thousand dollars in noneconomic damages or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended.

* * *

(F) The court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed and limited pursuant to section 1345.092 of the Revised Code, if either of the following apply:

* * *

(2) The supplier has knowingly committed an act or practice that violates this chapter.

**{¶40}** Based on the language of the statute, an award of treble damages is not linked to an award of attorney fees as the trial court found.

**{¶41}** R.C. 1345.09 provides relief to consumers for violations of Revised Code Chapter 1345. It sets out various types of relief and the requirements for obtaining relief. In order for the consumer to recover treble damages, the court must find a deceptive or unconscionable act or practice. R.C. 1345.09(B). But in order to recover attorney fees, there is another requirement. The court must find that the supplier acted "knowingly" in committing the deceptive/unconscionable act or practice. R.C. 1345.09(F)(2). Thus, the burden is higher to recover attorney fees than to recover treble damages.

**{¶42}** Therefore, the trial court erred in finding that in order to recover treble damages, Cartwright was required to prove that BHF *knowingly* committed an act or practice that violated Revised Code Chapter 1345.

**{¶43}** Even though the trial court may have erred, however, this does not automatically lead to the conclusion that Cartwright is entitled to treble damages. R.C. 1345.09(B) provides that "the consumer may rescind the transaction *or* recover, * * * three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater." (Emphasis added.) In this case, Cartwright elected to rescind the agreement.

**{¶44}** The remedies of rescission and damages are mutually exclusive. *Eckman v. Columbia Oldsmobile, Inc.*, 65 Ohio App.3d 719, 721-722, 585 N.E.2d 451 (1st Dist.1989). A consumer that retains his rights under the contract may recover three times his actual damages. *Mid-America Acceptance Co. v. Lightle*, 63 Ohio App.3d 590, 600, 579 N.E.2d 721 (10th Dist.1989). But "if the consumer elects rescission, while he is entitled to be restored the amounts paid to the defrauding party, he is not entitled to three times that amount." *Id.*

**{¶45}** Cartwright elected rescission when he told the BHF employee to take the tile back and that he did not want to go forward with the job. Thus, he was only entitled to be restored the amount he paid to BHF. Cartwright paid BHF a $750.00 deposit for the tile. The trial court awarded this sum back to Cartwright. Pursuant to the statute, Cartwright was not entitled to three times that amount.

**{¶46}** Thus, Cartwright was not entitled to treble damages, although not for the reason put forth by the trial court. Accordingly, Cartwright's second assignment of error is without merit.

**{¶47}** Cartwright's third assignment of error states:

> THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FAILING TO FIND FOR AND AWARD PLAINTIFF-APPELLEE AND CROSS-APPELLANT JAMES CARTWRIGHT'S ATTORNEY FEES.

**{¶48}** Cartwright argues that intent to deceive is not required to prove entitlement to attorney fees. He goes on to argue the trial court erroneously relied on

the "testimony" instead of the "evidence." Cartwright contends that the burden was on BHF to provide evidence that Aron supplied Cartwright with a written agreement setting out the terms of their agreement, a written or oral estimate for the work, a written notice of his right to cancel, and a deposit receipt. He asserts that BHF's failure to provide him with these documents were deceptive practices pursuant to R.C. 1345.23, R.C. 1345.28, R.C. 1345.23, Ohio Admin.Code 109:4-3-05, and Ohio Admin.Code 109:4-3-07.

{¶49} As discussed in assignment of error one, BHF did engage in several unfair or deceptive acts or practices. Pursuant to R.C. 1345.09(F)(2) the court *may* award reasonable attorney's fees to the prevailing party if the supplier *knowingly* committed an act or practice that violates Revised Code Chapter 1345. "'Knowledge' means actual awareness, but such actual awareness may be inferred where objective manifestations indicate that the individual involved acted with such awareness." R.C. 1345.01(E).

{¶50} The trial court did not find that BHF committed an act or practice that violated the OCSPA. Therefore, it denied Cartwright's motion for attorney fees. But we have found that BHF committed several acts or practices in violation of the OCSPA. Consequently, this matter should be remanded to the trial court to consider whether an award of attorney fees is appropriate in this case and, if so, what fees are reasonable.

{¶51} Accordingly, appellant's third assignment of error has merit.

{¶52} Cartwright's fourth assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FAILING TO GRANT PLAINTIFF-APPELLEE AND CROSS-APPELLANT JAMES CARTWRIGHT'S REQUEST FOR INJUNCTIVE RELIEF.

{¶53} In his final assignment of error, Cartwright asserts that the trial court erred by failing to address his request for injunctive relief. He claims he was entitled

to injunctive relief pursuant to R.C. 1345.09(D).

**{¶54}** R.C. 1345.09(D) provides: "Any consumer may seek a declaratory judgment, an injunction, or other appropriate relief against an act or practice that violates this chapter." In his complaint, Cartwright requested injunctive relief.

**{¶55}** The trial court did not rule on Cartwright's request for injunctive relief. But the trial court would not have reached the point on ruling on injunctive relief because it found that BHF did not violate the OCSPA. Thus, Cartwright would not have been entitled to any relief under R.C. 1345.09(D).

**{¶56}** But we have found that BHF violated the OCSPA. Therefore, on remand, the trial court should consider whether injunctive relief is appropriate.

**{¶57}** Accordingly, Cartwright's fourth assignment of error has merit.

**{¶58}** For the reasons stated above, the trial court's judgment is hereby affirmed as to its award of $1,715.00. The judgment is reversed as to its finding that BHF did not commit unfair or deceptive acts or practices under the OCSPA. BHF did commit acts or practices that violated the OCSPA. The matter is remanded to the trial court to rule on the issues of whether attorney fees and/or injunctive relief are warranted in this case.

Vukovich, J., concurs.

Waite, J., concurs.