[Cite as *Davis v. Hawley Gen. Contracting, Inc.*, 2015-Ohio-3798.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

J. Thomas Davis & Judy Davis,
Trustees of the Davis Family
Holiday Lake Trust

        Appellants

v.

Hawley General Contracting, Inc., et al.

        Appellees

Court of Appeals No. H-14-018

Trial Court No. CVH 2013 0947

**DECISION AND JUDGMENT**

Decided:  September 18, 2015

* * * * *

Joel R. Campbell, for appellants.

Michael J. Warrell, for appellees.

* * * * *

**JENSEN, J.**

{¶ 1} Following a bench trial, plaintiffs-appellants, J. Thomas Davis and Judy

Davis, individually and as Trustees of the Davis Family Holiday Lake Trust

("appellants"), appeal the November 25, 2014 judgment of the Huron County Court of

Common Pleas, which awarded damages to appellants on their breach of contract claim against defendant-appellee, Hawley General Contracting, Inc. ("HGC"), but awarded nothing against defendant-appellee, Joel Hawley, personally, or on appellants' remaining claims. For the reasons that follow, we reverse the trial court's judgment.

## I. Background

{¶ 2} Tom and Judy Davis purchased an approximately 1000-square-foot lakefront vacation home on Holiday Lake in Willard, Ohio in 2005. They transferred ownership of the home to The Davis Family Holiday Lake Trust, of which they are trustees, intending that the vacation home would pass from generation to generation. Their son, Michael, and his wife, Debbie are successor trustees.

{¶ 3} The house was built on a crawl space. After purchasing the property, appellants discovered that the crawl space was wet and the floor joists had dry-rotted. They consulted with several contractors, including Hawley, who was a friend of Michael's. Hawley suggested not only repairing the problems with the crawl space, but also creating a walk-out basement. Interested in creating additional space in the home, appellants hired Hawley to perform the work. They signed a contract for construction with HGC on March 11, 2010. Hawley signed his name to the contract above the words "BUILDER, Hawley General Contracting."

{¶ 4} The parties' contract provided that HGC would excavate the foundation, pour footing for a new foundation, lay eight-inch block walls, and create a walk-out basement with two patio doors or windows. To do this required that the house be braced

2.

and supported above the foundation and then essentially placed on top of the basement walls. HGC agreed to obtain all necessary permits, licenses, and inspections for the work. Hawley obtained a building permit in March of 2010 from Holiday Lakes Property Owners Association, Inc. ("POA"). That permit required compliance with the POA ordinances, the Building Officials and Code Administrators ("BOCA") code, and state laws.

{¶ 5} The basement work was completed in late June of 2010. Appellants paid a total of $60,000 for the work. Within a couple of weeks, a horizontal crack appeared in the walls. Appellants notified Hawley. Hawley, who had subcontracted the work, had it regrouted, but the crack reappeared within a couple of weeks. Again he had it regrouted and again it failed. The parties disagreed about the extent to which the crack was problematic and HGC never effectively repaired it.

{¶ 6} Appellants hired GPRS, Inc. to determine whether the walls had been adequately reinforced.[1] Nick Janney, a GPRS employee, x-rayed the walls using technology that can identify where there are reinforcements in concrete and where there are voids. He discovered that along the north and south walls of the basement, HGC installed rebar no higher than the third concrete block from the top. There were also various areas where grouting did not extend all the way up. In other words, the walls were not vertically reinforced from bottom to top.

---

[1] "GPRS" is short for Ground Penetrating Radar Systems.

3.

{¶ 7} On December 2, 2013, appellants filed a seven-count complaint against Hawley and HGC alleging: (1) breach of written contract; (2) breach of warranty; (3) violation of the consumer sales practices act ("CSPA"); (4) negligent or reckless damage to real property; (5) breach of oral contract; (6) unjust enrichment; and (7) violation of the home construction service suppliers act. The case was tried to the bench on October 23 and 24, 2014. Appellants testified, as did their son, Michael; Janney; Michael McCurdy, the building inspector for the city of Westerville; Barry Neumann, a structural engineer with Richland Engineering; Ken Oswald, owner of Carpentry By Kenny, Incorporated; Hawley; and Travis Mayer, an architect.

{¶ 8} Mr. Davis testified about his dealings with Hawley leading up to and after hiring him for the basement project. He indicated that he believed that the work would be performed in accordance with the applicable building codes. Davis described that the horizontal crack appeared shortly after the basement was completed and that Hawley told him that it was a stress crack from placing the house back down onto the walls. He had the masons come back to regrout it. When the walls cracked again, Hawley told Davis that the masons had not used non-shrinking grout and he had them come back again. Two weeks later, it cracked again, and Davis said that it became obvious that the crack was going to continue to reappear. He produced photos showing that the crack was large enough for a quarter and a nickel to fit within the width of it. He said that water leaked into the basement and he described that air flowed through the crack to the point that if he held a piece of paper in front of the crack, the wind would blow the paper. Although

4.

Hawley initially indicated that he would take care of it, he never did. In the meantime, Davis testified, the wall continued to move and the crack grew.

{¶ 9} McCurdy summarized the state's residential building code requirements for vertical reinforcement of basement walls. He testified that rebar must be installed from the top of the footer to the top of the wall, the sill plates have to be anchored to the top of the foundation walls, and the floor joists have to be anchored to the sill plates. McCurdy observed that HGC had not installed any of these reinforcements.

{¶ 10} Neumann testified that he inspected the property and observed there was water in the basement, leakage on the walls, the walls were bowed in, and the backfill was "extremely settled." He saw water flowing out of an outlet behind the wall. Neumann concurred that the code required the vertical reinforcements described by McCurdy and testified that his inspection of the property revealed that the walls hinged at the point where the rebar stopped. He observed no anchors where the wall meets the sill plate. He concluded that HGC's work did not meet minimum code requirements, and that the walls were not structurally sound. He explained that there was a long-term progression towards failure and the question was *when*, not *if*, the walls would fail. Neumann's opinion was that the proper remedy was to rebuild the walls.

{¶ 11} Oswald described the necessary steps to reinforce the walls. He concurred with Neumann that replacement of the walls would be the most effective solution, and he estimated, conservatively, that the cost of doing so would be just over $30,000.

5.

{¶ 12} Architect Travis Mayer, who sometimes works on projects with Hawley, testified in Hawley's case-in-chief. Mayer viewed the basement and described that it was dry. While he conceded that the code required rebar from the footers to the sill plates, he explained that with an existing house on top of the foundation, rebar could not be installed all the way to the sill plates without compromising the integrity of the concrete blocks into which they are inserted. He said that to compensate for this, it is common to "slop" the unreinforced blocks with grout. Mayer also believed that the wall was purposely flared out and while not ideal, the crack in the wall was not problematic because it followed the coursing as opposed to having occurred in the middle of a block. Mayer agreed that the standard practice was to use anchor bolts to anchor the basement walls to the sill plate. He did not look to see if this had been done. He also agreed that there was substantial settling which meant that the backfill was insufficient. Mayer concluded that while not built to code, the work was "clean" and of good quality.

{¶ 13} Ultimately, Hawley admitted that the code required rebar from the footers to the sill plates and that this was not done. Like Mayer, he explained that it was not feasible under the circumstances to install rebar in this manner. His view was that the walls were not moving and that they were intentionally built to flare at the point of the crack. He maintained that the crack was merely at a seam and was not a crack in the blocks, thus there was no structural problem, he was not concerned, and there was no need to fix it. Hawley, on cross-examination admitted, however, that what he described as a "built-in flare" had actually tripled in size from one-half of an inch to an inch and

6.

three-eighths. But Hawley emphasized that the work had passed inspection. He also boasted that he had done 40 basements using the same procedure and his customers were happy.

{¶ 14} The trial court issued a written decision, journalized November 25, 2014, finding for appellants on their breach of contract claim. The court determined that the Holiday Lake trust and HGC were the real parties in interest to the contract. It was persuaded by Neumann's testimony that HGC's work was not completed in a workmanlike manner in accordance with the applicable building code in that HGC failed to install rebar from the footer to the sill plate, failed to provide appropriate anchoring at the sill plates, and performed "questionable backfilling" along the walls. It concluded that the absence of rebar caused the horizontal cracking in the walls. The court awarded $30,400 to compensate appellants for the replacement of the walls.

{¶ 15} The court rejected appellants' claim that HGC acted recklessly, that it misrepresented the quality of its work, or that it acted in an unfair or deceptive manner in its dealings with appellants. The court determined that it was not reasonable for appellants not to realize that the work was being undertaken by the construction company and not by Hawley as an individual, and, therefore, declined to find Hawley personally liable. It concluded that the evidence failed to establish a CSPA violation and that there was no basis for punitive damages, treble damages, or attorneys fees. Appellants appealed the trial court's decision and assign the following errors for our review:

**FIRST ASSIGNMENT OF ERROR**

IT IS AN ABUSE OF DISCRETION AND, THEREFORE, ERROR FOR THE TRIAL COURT TO FAIL TO MAKE A FINDING THAT DEFENDANTS-APPELLEES AND EACH OF THEM [sic] VIOLATED THE CONSUMER SALES PRACTICES ACT FOR THEIR FAILURE TO PERFORM THEIR CONSTRUCTION OBLIGATIONS IN A WORKMANLIKE MANNER.

**SECOND ASSIGNMENT OF ERROR**

IT IS AN ABUSE OF DISCRETION AND, THEREFORE, ERROR FOR THE TRIAL COURT TO FAIL TO MAKE A FINDING OF PERSONAL LIABILITY FOR DEFENDANT-APPELLEE INDIVIDUAL WHEN HE FAILED TO DISCLOSE THE AGENCY STATUS FOR A LIMITED LIABILITY ENTITY.

**THIRD ASSIGNMENT OF ERROR**

IT IS AN ABUSE OF DISCRETION AND, THEREFORE, ERROR FOR THE TRIAL COURT TO FAIL TO MAKE A FINDING THAT DEFENDANTS-APPELLEES WERE RECKLESS AND EACH OF THEM ARE OBLIGATED FOR THE PAYMENT OF THE ATTORNEY FEES OF PLAINTIFFS.

## II. Standard of Review

{¶ 16} This is an appeal from the trial court's judgment following a bench trial. "In a bench trial, the trial court assumes the fact-finding function of the jury." *Cleveland v. Welms,* 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125, ¶ 16 (8th Dist.). Although appellants couch their assignments of error in terms of an abuse of discretion, we review the trial court's findings under a manifest weight standard. *Id.* In doing so, we "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." (Internal citations omitted.) *Id.*

## III. Analysis

### A. First Assignment of Error

{¶ 17} In their first assignment of error, appellants claim that the trial court erred in concluding that appellees did not violate the CSPA by breaching their obligation to construct the basement in a workmanlike manner meeting building code requirements. They claim that appellees acted deceptively in concealing their failure to install rebar reinforcement and anchors. They contend that although the CSPA has a two-year statute of limitations, appellees made repeated misrepresentations and assurances that they would make necessary repairs, thereby engaging in unfair and deceptive acts or practices after the original transaction. They urge that their CSPA action was filed within two years of appellees' last misrepresentations and was, therefore, timely filed.

9.

**{¶ 18}** Appellees respond simply that a number of Ohio cases have found that less-than-satisfactory workmanship does not necessarily rise to the level of unconscionability and they point out that there were differing opinions offered as to the quality of the work performed. Appellees do not address appellants' remaining arguments.

**{¶ 19}** The CSPA "prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions." *Estate of Cattano v. High Touch Homes, Inc.,* 6th Dist. Erie No. E-01-022, 2002-Ohio-2631, ¶ 42, citing *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29, 548 N.E.2d 933 (1990); R.C. 1345.02(A). "In general, the CSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving, while 'unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Hanna v. Groom*, 10th Dist. No. Franklin No. 07AP-502, 2008-Ohio-765, ¶ 33, quoting *Johnson v. Microsoft Corp.,* 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 24. A failure to perform services in a workmanlike manner by itself does not constitute a CSPA violation. *Warren v. Denes Concrete, Inc.,* 9th Dist. Lorain Nos. 08CA009414, 08CA009422, 2009-Ohio-2784, ¶ 25. To be actionable under the CSPA, the performance also must amount to an unfair, deceptive, or unconscionable act. *Id.* Similarly, not every breach of contract constitutes a CSPA violation, however "when a supplier knowingly commits a breach, the breach is likely also an unfair or deceptive act." *Cartwright v. Beverly Hills Floors,* 7th Dist. Mahoning No. 11 MA 109, 2013-Ohio-2266, ¶ 17.

10.

{¶ 20} Among the documents admitted as exhibits at trial were Hawley's application for a building permit where he agreed to perform work in compliance with the POA's ordinances, the BOCA code, and the laws of the state of Ohio, and excerpts from the Ohio residential code setting forth the requirements for reinforcement of foundation walls. Hawley, on cross-examination, was unable to articulate what the codes and ordinances required with respect to vertical reinforcements, but McCurdy recited that "[u]nder the strongest of soil conditions, you would have to have Grade 60 Number 5, which is a five-eighths inch diameter rebar, spaced at 40 inches on center plus 12 inches either side of any fenestration in that wall." He also testified that "there's a sill plate that has to be anchored to the top of [the] foundation wall * * * every six feet on center with half-inch diameter anchor bolts. It also has to be anchored at 12 inches from each corner of each side of each corner and within 12 inches of each splice of each sill plate." Each sill plate requires a minimum of two anchor bolts. McCurdy described the implications of the absence of vertical reinforcements:

> First of all, the lack of vertical reinforcement will allow the wall to hinge. And by that I mean as the vertical * * * rebar goes up the vertical wall, where the rebar stops, the wall will start to pull away from itself one way or the other. Normally in this situation, the bottom of the wall will stay stationary. The top part of the wall that's unreinforced will move away from the bottom part of the wall, causing a stress crack in the wall itself.

11.

* * *. That in turn, as you go up the wall, that distance grows, okay. And, in fact, will cause the structure to pull away from itself.

{¶ 21} Neumann testified that here, number six rebar—which is .44 square inches—needed to be installed from the floor to the sill plate every 40 inches in order to be code-compliant. Hawley installed number four rebar—.2 square inches—every 48 inches and it did not extend from floor to sill plate. McCurdy, Neumann, and Mayer all agreed that this fell below the minimum standard required by the code. Mayer also agreed that anchor bolts must be used to anchor the basement walls to the sill plates, yet he did not look closely enough to see whether this had been done.

{¶ 22} The trial court found that the evidence failed to establish that appellees misrepresented the quality of the work or acted in an unfair or deceptive manner in their dealing with appellants. But Mr. Davis testified that he specifically asked Hawley how far the rebar went, and Hawley responded that it went all the way to the top; Hawley testified that he did not become aware that the rebar did not extend all the way up to the sill plate like it was supposed to until he received a copy of appellants' lawsuit. It was not until appellants hired GPRS to x-ray the walls that they learned that rebar was not installed from footer to sill plate and that there was an absence of grout in other places as well. Moreover, after two failed attempts to repair the crack, Hawley repeatedly assured appellants that he would make necessary repairs, but he never examined the root of the problem and he never made the necessary repairs, thus forcing appellants to pursue litigation.

12.

**{¶ 23}** In *Estate of Cattano,* 6th Dist. Erie No. E-01-022, 2002-Ohio-2631, ¶ 52, we upheld a jury verdict finding a CSPA violation against the seller of a modular home where the work did not meet the standards of the model shown to the buyer and the repairs the seller intended to make were insufficient to remedy the problems. Similarly, in *Erie Shores Builders, Inc. v. Leimbach,* 6th Dist. Huron No. H-99-034, 2001 WL 803952, *1, 3, we upheld the trial court's decision finding a CSPA violation where a contractor hired to construct a second-floor addition cut down a tree, damaged shrubs, removed existing electrical service and improperly installed new service, improperly reconstructed a chimney, and negligently installed a bathroom drain, resulting in water damage.

**{¶ 24}** Upon our review of the record below, we find that the trial court erred when it declined to conclude that appellees' conduct in constructing the basement below minimum code requirements, failing to determine and to disclose to appellants that rebar was installed only to the point where the wall hinged, making inadequate attempts at repairing the horizontal crack, and assuring appellants that they would remedy the situation, but failing to do so, was sufficient to establish a CSPA violation. This is particularly true given the latent nature of this structural defect which required x-ray technology to discover.

**{¶ 25}** We find appellants' first assignment of error well-taken.

13.

**B. Second Assignment of Error**

{¶ 26} In their second assignment of error, appellants claim that the trial court erred in declining to find Hawley personally liable under the CSPA for failing to disclose that he was acting as an agent of a limited liability company. They argue that Hawley's repeated signatures on documents never mentioned that he was signing on behalf of a corporate entity and that appellants were unaware that Hawley was acting in his capacity as an agent of a corporate entity.

{¶ 27} "A corporate officer may be held individually liable for acts that violate the CSPA" where "the officer participated in the commission of an act or specifically directed the particular act to be done." *Yates v. Mason Master, Inc.,* 11th Dist. Lake No. 2002-L-001, 2002-Ohio-6697, ¶ 24. In *Gayer v. Ohio Bus. Trading Assn.,* 8th Dist. Cuyahoga No. 54892, 1988 WL 87629, *2 (July 7, 1988), the Eighth District Court of Appeals held that the corporation's president, who made the representations upon which the CSPA claim was premised, was personally liable to the plaintiffs. We reach the same conclusion here. While appellants perhaps should have been aware that Hawley was acting on behalf of HGC, the fact remains that Hawley engaged in the conduct giving rise to appellants' claims and is personally liable for the CSPA violation at issue. We, therefore, find appellants' second assignment of error well-taken.

14.

## C. Third Assignment of Error

{¶ 28} In their third assignment of error, appellants contend that the trial court erred in failing to find that HGC and Hawley were reckless and that each of them is obligated to pay appellants' attorney fees.

{¶ 29} R.C. 1345.09(F)(2) permits the court to award reasonable attorney fees to a prevailing plaintiff where the supplier has knowingly committed an act or practice that violates the CSPA. To find that the supplier acted "knowingly," requires only that he or she intentionally engaged in the conduct giving rise to the CSPA violation—the supplier need not have known that the conduct violated the law in order for the court to grant attorney fees. *Borror v. MarineMax of Ohio, Inc.,* 6th Dist. Ottawa No. OT-06-010, 2007-Ohio-562, ¶ 50.

{¶ 30} Hawley testified that it was his practice to construct basement walls in this manner despite the fact that the vertical reinforcement fell below the minimum standards set forth for residential construction. He said that he had constructed 20-30 basements using the same method. This testimony establishes that Hawley and HGC acted knowingly for purposes of the CSPA. We, therefore, find appellants' third assignment of error well-taken.

## IV. Conclusion

**{¶ 31}** For the foregoing reasons, we reverse the November 25, 2014 judgment of the Huron County Court of Common Pleas and remand the matter for further proceedings consistent with this decision. The costs of this appeal are assessed to appellees under App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.　　　　

_____
JUDGE

Stephen A. Yarbrough, P.J.　　　

_____

James D. Jensen, J.　　　　　
CONCUR.

JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.