[Cite as *Fischer v. Monarch Van Lines, L.L.C.*, 2024-Ohio-2812.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF OHIO

KILLIAN FISCHER, ET AL.,              :

        Plaintiffs-Appellants,          :          No. 113465

        v.              :

MONARCH VAN LINES, LLC,              :
ET AL.,

                           :

        Defendants-Appellees.

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 25, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-964432

---

### *Appearances:*

Cavell Law, LLC, and Hunter G. Cavell, *for appellants*.

Gabriela Orta, *pro se*.

---

SEAN C. GALLAGHER, J.:

{¶ 1} Killian and Theresa Fischer appeal the trial court's decision dismissing their case for the lack of personal jurisdiction over Monarch Van Lines, LLC, and Gabriela Orta, both of whom are residents of Austin, Texas. Orta filed a

motion to dismiss for the lack of personal jurisdiction, but the defendants otherwise have not defended in this action. For the following reasons, we nonetheless affirm.

{¶ 2} The Fischers asserted three state law claims in the complaint: breach of contract, unjust enrichment, and a violation of the Consumer Sales Practices Act ("CSPA") for the unworkmanlike services rendered under the terms of the contract. They expressly sought in excess of $25,000 based on the breach-of-contract count, $9,293.75 based on the unjust-enrichment count, and $91,760 on the CSPA count, including the statutory trebling of damages. This case, however, is more complicated than the pleading lets on because of the subject matter of the underlying claims — implicating an interstate shipping agreement and claims against an interstate carrier moving household goods. For this reason, the foundational law not relevant to the disposition will be included while exploring the facts for the sake of clarity.

{¶ 3} According to the allegations in the complaint, Killian entered into a contract with Monarch for the purpose of moving household goods from Texas to Brecksville, Ohio. Monarch is alleged to have been the interstate carrier contracted to pack, store, and ship the household goods. At the time they entered the contract, the Fischers were also residents of Texas. The Fischers jointly alleged that Orta was personally liable for the contract because she signed the agreement as a representative of Monarch. *But see Perk v. Tomorrows Home Solutions, L.L.C.*, 2016-Ohio-7784, ¶ 10 (8th Dist.) (in general, the representative of a corporation is not personally liable for a contract). There are no allegations that Orta was involved

with the actual work performed or that she personally directed the employees or agents to act in the manner that resulted in the damage to the Fischers' property. *See Burns v. Spitzer Mgt.*, 2010-Ohio-5369, ¶ 32 (8th Dist.) (officer of a corporation is only individually liable under the CPSA for conduct the officer actually undertook or expressly directed to be done). The sole allegation implicating Orta's personal liability is based on her signing the agreement in her representative capacity.

{¶ 4} The contract price between Monarch and Killian referenced a "binding estimate" of $9,293.75 for the interstate shipment of household goods, and within the contract, Killian agreed to several pertinent provisions.

{¶ 5} First, the Fischers expressly waived insurance for the full replacement cost of any goods damaged in transit or upon delivery through the bill of lading addendum Theresa executed, which is required under federal law in order for the waiver to be effective. *See* 49 U.S.C. 14706(f) (providing that unless the carrier receives a waiver in writing for household goods, the maximum liability is an amount equal to the replacement value of such goods subject to a maximum amount as determined by the declared value of the shipment). The waiver clause, implementing Section 1 of the parties' agreement, advised the Fischers that Monarch would be responsible for damages calculated by multiplying the actual weight of the damaged goods by 60 cents. That clause was referred to as the "60 cent per pound per article" clause. The example given in the waiver clause provided that if the mover damaged a piece of electronic equipment valued at $1,000, but it weighed just ten pounds, the moving company's liability was limited to $6.00. The

implications of that provision of the contract were not addressed in the complaint or discussed at trial.

{¶ 6} In addition to the waiver of insurance for damaged goods, the contract between the Fischers and Monarch included a choice-of-law provision, contained in Section 11 of their agreement. That clause designated that any suits involving the interstate shipment, which must be filed in Miami Dade County, Florida, "must be limited to the governing federal law." That language ostensibly invokes the Carmack Amendment under 49 U.S.C. 14706. "The Carmack Amendment is a federal statute that provides the exclusive cause of action for interstate shipping contract claims, and it completely preempts state law claims alleging delay, loss, failure to deliver and damage to property[,]" which includes residential, household goods. *White v. Mayflower Transit*, L.L.C., 543 F.3d 581, 584 (9th Cir. 2008), citing *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 687-688 (9th Cir. 2007). The federal law impacts the viability of the CSPA claim the Fischers advanced. *See, e.g., Shemes v. United States Moving Serv., LLC*, 2023 U.S. Dist. LEXIS 176910, *9 (D. Kan. Oct. 2, 2023) (that federal law preempts common-law contract and tort claims between a carrier and a shipper seeking recovery for that loss or damage," and therefore, the plaintiffs' claims under Kansas's version of the state consumer-protection act were dismissed as against the carrier who moved, stored, and shipped the property). The choice-of-law provision also included the Fischers' express consent to jurisdiction of local courts in Travis County, Texas.

{¶ 7} The Fischers allege that Monarch packed, stored, and moved their household goods from Texas to Ohio. During the packing of the Fischers' household goods in Texas, Monarch allegedly refused to move a grill and artwork, valued at $1,100, and demanded the second payment representing over 50 percent of the contractual price, which was required under the terms of the contract. Upon delivery of the household goods to Ohio, the Fischers claimed Monarch damaged several items of personal property during the transit and temporary storage or upon delivery, ruining $13,050 worth of goods. In addition, there is an allegation that the agents also allegedly caused damage to the house as evidenced by photos of scratches on drywall and in wood flooring.

{¶ 8} It is not clear if Monarch provided the delivery services within Ohio or whether a local independent contractor was involved. In the appellate briefing, the Fischers refer to the delivery personnel as "agents" of Monarch and some evidence introduced at trial indicated an independent contractor made the final delivery, as demonstrated by the photograph of the delivery truck with a different company's name emblazoned on the door. This is potentially a fact of consequence for the purposes of personal jurisdiction because the damage to the home or household goods on the day of delivery is the only act alleged to have occurred in Ohio. *See, e.g., Rosenberg v. ABF Freight Sys.*, 2014 U.S. Dist. LEXIS 28994, *15 (S.D. Ohio Mar. 6, 2014) (damages caused to household goods occurred during transit and outside Ohio, and therefore, defendants who did not make the final delivery did not transact business in Ohio under the long-arm statute or for the

purposes of the minimum-contacts test). Nevertheless, assuming for the sake of this appeal that Monarch was responsible for the final delivery, Theresa claimed that the walls needed to be repainted at a cost of $1,380, and the wood flooring replaced at a cost of $10,800.

{¶ 9} According to the invoice contained within the parties' agreement, the Fischers paid $2,590.51 as a down payment for the $9,293.75 contract price — in the complaint the Fischers alleged that amount was "demanded" on the day of packing. They paid an additional $3,351.62 at an unknown time with a personal check. In the complaint, the Fischers acknowledged that a total of $5,942.13 was paid up through the packing phase, as required by the contract. That left a balance due of $3,351.62. According to the Fischers, $3,651.62 was demanded of them at the time of delivery, which was paid with money orders. It appears that payment related to Sections 2 and 8 of the parties' agreement, which provided that delivery would not be completed until the carrier was paid in full. The final payment included an extra $300 charge not contemplated under the "binding estimate." The Fischers did agree, however, to pay an additional $140 for "post contract services requested/ordered" involving the distance required to move the goods into the specific rooms of the house, which was included in the final payment. Nothing in the record accounts for the additional $160 of that final payment. Nevertheless, that $160 is nominal compared to the Fischers' allegations.

{¶ 10} At trial, Theresa claimed that the Fischers paid $12,091.26 in total to the shippers, which is $2,797.51 in excess of the contract price. The receipts

introduced into evidence at trial, totaling $3,658.62 and that included an additional $7 in fees charged by the United States Post Office for the money orders the Fischers purchased, do not bear that amount out. The receipts submitted as proof of the $2,797.51 overcharge actually demonstrated the final payment of $3,651.62 being remitted to Monarch. That fact was already noted on the invoice as the remaining balance due and paid upon delivery as discussed above.[1]

{¶ 11} Regardless of all that, in response to the complaint, Orta filed a motion to dismiss for the lack of personal jurisdiction, claiming that the defendants lacked the requisite minimum contacts with Ohio. That was Orta's only appearance in this matter. According to Orta, the defendants did not waive personal jurisdiction in Ohio courts because the forum-selection clause in the contract specified Texas or Florida as the proper venue. In response, the Fischers cited Ohio's long-arm statute codified under R.C. 2307.82(A)(1)-(4), which provides that

> [a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: (1) Transacting any business in this state; (2) Contracting to supply services or goods in this state; (3) Causing tortious injury by an act or omission in this state; (4) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct, or

---

[1] According to Section 8 of the parties' agreement, although Monarch could only charge up to the "binding estimate" at the time of delivery, the Fischers could voluntarily pay the actual charges incurred by Monarch for shipping and storing the goods, "which may exceed the amount of the estimate." The implications of that provision were also not addressed in the complaint or discussed at trial despite the Fischers' claim that Monarch unreasonably demanded an additional payment of what appears to be $160 upon delivery.

derives substantial revenue from goods used or consumed or services rendered in this state.

The trial court initially denied Orta's motion to dismiss.

{¶ 12} The Fischers voluntarily dismissed the breach-of-contract claim, leaving only the CSPA[2] and the unjust-enrichment claims for trial.[3] The amount requested in damages at the ex parte trial, including the trebling provision of the CSPA, totaled $120,522.73,[4] plus attorney fees calculated as being 40 percent of

---

[2] Throughout the lower court's proceeding, the Fischers maintained that a CSPA violation claim can be solely based on a supplier's performance of the services in an unworkmanlike manner under the terms of a contract. Even if the CSPA is applicable, we are compelled to note in light of the allegations discussed throughout this opinion, that in general, "a failure to perform services in a workmanlike manner by itself does not constitute a CSPA violation." *Davis v. Hawley Gen. Contracting, Inc.*, 2015-Ohio-3798, ¶ 19 (6th Dist.); *see also Pep Boys--Manny, Moe & Jack of Delaware, Inc. v. Vaughn*, 2006-Ohio-698, ¶ 35-36 (10th Dist.) (making unqualified statements that the work performed was to a certain standard of quality is a violation of R.C. 1345.02(B)(2)); *Scott v. First Choice Auto Clinic, Inc.*, 2023-Ohio-3855, ¶ 38 (10th Dist.) (recoverable damages under R.C. 1345.09 are limited to the damages directly related to the actual violation of R.C. Ch. 1345, and therefore, the trial court erred by awarding damages based on losses caused by poor workmanship); *Nicholson v. Davis Auto Performance*, 2024-Ohio-205, ¶ 24 (5th Dist.). The merits of the CSPA claim, however, are not before this panel. This opinion should not be construed as rendering any conclusion as to that issue.

[3] An unjust-enrichment claim generally cannot exist when arising from the same subject matter as an enforceable contract. *Kent State Univ. v. Manley*, 2023-Ohio-4650, ¶ 21 (8th Dist.), citing *Deffren v. Johnson*, 2021-Ohio-817, ¶ 10 (1st Dist.), and *Zara Constr., Inc. v. Belcastro*, 2022-Ohio-788, ¶ 62 (5th Dist.).

[4] It should also be noted that part of the damages sought at trial under the CSPA claim impermissibly included rescission of the contract and a return of the money the Fischers paid under the terms of the contract along with damages stemming from the alleged CSPA violation. *See Scott* at ¶ 33 (10th Dist.) (for violations of the CSPA, "[r]escission and damages are mutually exclusive remedies; not cumulative cures for the same conduct" so the consumer must choose one of the two remedies), citing *Cartwright v. Beverly Hills Floors, Inc.*, 2013-Ohio-2266, ¶ 44 (7th Dist.), *Ferron v. Video Professor, Inc.*, 2009-Ohio-3133, ¶ 55 (5th Dist.), *Mike Castrucci Ford Sales, Inc. v. Hoover*, 2008-Ohio-1358, ¶ 16 (12th Dist.), and *Eckman v. Columbia Oldsmobile, Inc.*, 65 Ohio App.3d 719, 722 (1st Dist. 1989).

requested damages. No documentation of the legal work performed was presented. *But see Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 145 (1991) (first step in awarding fees under R.C. 1345.09(F) is to calculate the number of hours reasonably expended prosecuting the CSPA violation); R.C. 1345.09(F) ("court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed").

{¶ 13} After the ex parte trial, limited to the presentation of evidence supporting the damages being sought, the trial court concluded that it lacked jurisdiction over the defendants and the case was dismissed. This appeal timely followed.

{¶ 14} In the sole assignment of error, the Fischers claim the trial court erred when it determined that the court lacked jurisdiction over the defendants because the forum-selection clause in the contract between them and the defendants was invalid and unenforceable. There is no merit to that argument.

{¶ 15} A court must obtain personal jurisdiction over a defendant before a final judgment may be rendered. *Youngstown City Demolition v. Rainy Day Rentals*, 2023-Ohio-3601, ¶ 12 (7th Dist.), citing *Maryhew v. Yova*, 11 Ohio St.3d 154, 156 (1984). Personal jurisdiction is a question of law that appellate courts review de novo. *Kauffman Racing Equip., L.L.C. v. Roberts*, 2010-Ohio-2551, ¶ 27. When a defendant asserts the affirmative defense of the lack of personal jurisdiction through a motion to dismiss, it becomes the plaintiff's burden to show that the trial court possesses personal jurisdiction over that particular defendant. *Id.* Under

Civ.R. 12(B)(2), in consideration of the written submissions and without an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdiction. *Id.,* citing *Fallang v. Hickey*, 40 Ohio St.3d 106, 107 (1988). "However, even where the trial court decides personal jurisdiction absent an evidentiary hearing, the plaintiff continues to bear 'the burden of proving, in its case-in-chief at trial, existence of facts upon which jurisdiction is based by a preponderance of evidence.'" *State ex rel. DeWine v. 9150 Group L.P.*, 2012-Ohio-3339, ¶ 15 (9th Dist.), quoting *Barile v. Univ. of Virginia*, 2 Ohio App.3d 233, 234, fn. 2 (8th Dist. 1981).

{¶ 16} Thus, the burden of proving the existence of personal jurisdiction rested upon the Fischers and that burden continued through trial. *Nejman v. Charney*, 2015-Ohio-4087, ¶ 15 (8th Dist.).

{¶ 17} The law on personal jurisdiction is well settled. Whether a trial court possesses personal jurisdiction over a nonresident defendant invokes two questions, both of which must be answered in the affirmative to secure the trial court's jurisdiction to consider the merits of the matter: "(1) whether the long-arm statute and the applicable rule of civil procedure confer jurisdiction and, if so, (2) whether the exercise of jurisdiction would deprive the nonresident defendant of the right to due process of law under the Fourteenth Amendment to the United States Constitution." *Kauffman Racing Equip.* at ¶ 28, citing *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.,* 68 Ohio St.3d 181, 183-184 (1994). Under the Fourteenth Amendment analysis, a plaintiff must establish that the defendant's contact with the forum state meets a minimum threshold, which is

determined by the breadth of the jurisdiction invoked. "Personal jurisdiction can be either general or specific" in nature. *Id.* at ¶ 46, citing *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992).

{¶ 18} "'General jurisdiction is proper only where "a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state."'" *Id.*, quoting *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002), and *Third Natl. Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). Specific jurisdiction, on the other hand, arises when "'a [s]tate exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *Id.* at ¶ 47, quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, fn. 8 (1984). Thus, if specific jurisdiction is invoked, the jurisdiction is limited to the contacts bringing rise to the lawsuit.

{¶ 19} The Fischers' claim in favor of personal jurisdiction in response to the motion to dismiss focused on Ohio's long-arm statute. There was no argument that the defendants' connection to Ohio satisfied the minimum-contacts test under the Fourteenth Amendment.

{¶ 20} Notwithstanding, according to the Fischers in this appeal, the trial court erred by enforcing the forum-selection clause and dismissing the action. The Fischers' focus is thus limited to validity of the forum-selection clause, which they challenge, claiming that the requirement of a Florida forum was unconscionable,

and therefore, the entire clause was unenforceable. That argument, however, is misplaced. Invalidating the forum-selection clause does not establish the trial court's jurisdiction over the out-of-state defendants. *See, e.g., Herold v. Venetis*, 2023-Ohio-3829, ¶ 33-34 (12th Dist.) (after concluding that the forum-selection clause favoring Massachusetts was not valid, the trial court's decision dismissing the case for the lack of personal jurisdiction was affirmed based on the defendant's lack of minimum contacts with Ohio).

{¶ 21} A forum-selection clause pertains to the venue and does not generally provide grounds to dismiss a case for the lack of personal jurisdiction. *See id.* at ¶ 30, citing *Natl. City Commercial Capital Corp. v. All About Limousines Corp.*, 2009-Ohio-1159, ¶ 7 (12th Dist.); *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear*, 53 Ohio St.3d 73, 78, (1990) (choice-of-law provisions "standing alone" are not per se dispositive on the question whether minimum contacts exist for the purposes of the constitutional analysis). Through a validly executed forum-selection clause, "parties to a contract may agree to submit to the jurisdiction of a particular court . . ., thereby waiving the requirement that the court have personal jurisdiction over the parties." *Id.* But that forum-selection clause, in which the parties agree to the jurisdiction of another state court, does not answer the question whether the plaintiff has demonstrated that the defendants have sufficient contacts to invoke an Ohio court's personal jurisdiction. And moreover, decisions invalidating or enforcing a forum-selection clause are generally not final-appealable orders under

R.C. 2505.02(B)(2), and thus, those decisions are not subject to immediate appeal. *ROE Dental Laboratory, Inc. v. Nowak*, 2023-Ohio-457, ¶ 29 (8th Dist.).

{¶ 22} It is true that a party may waive the right to assert the lack of personal jurisdiction as an affirmative defense through executing a contract that includes a forum-selection clause. *See Kennecorp Mtge. Brokers v. Country Club Convalescent Hosp.*, 66 Ohio St.3d 173, 175 (1993), and *Preferred Capital, Inc. v. Power Eng. Group, Inc.*, 2007-Ohio-257, ¶ 6. Nevertheless, the pertinent issue in this case focuses on the preliminary question whether the trial court possessed personal jurisdiction over the out-of-state defendants through application of the minimum-contacts test irrespective of the forum-selection clause, which did not include a waiver to an Ohio court's jurisdiction. This minimum-contact question has not been addressed by the Fischers throughout the proceedings.

{¶ 23} It is undisputed that the forum-selection clause in the contract at issue does not vest Ohio courts with jurisdiction to resolve the parties' dispute — the parties agreed that either Texas or Florida would be the chosen venue in which personal jurisdiction was waived. Orta validly preserved the jurisdictional question for the trial court's review, and that question applied equally to her individually and the corporate entity. The Fischers seek a declaration that the forum-selection clause is invalid, but that puts the proverbial cart before the horse. In order to review the enforceability of a contractual term, the court must first possess jurisdiction over the defendants. Neither Monarch, which never appeared in this action through a licensed attorney, nor Orta waived the defense of lack of personal jurisdiction in

Ohio courts through the forum-selection clause at issue. The defendants, even assuming that Orta may be bound by the terms of the contract she signed in a representative capacity, only waived personal jurisdiction as a defense in Florida.

{¶ 24} Thus, the preliminary question in this appeal, and the only one within this court's jurisdiction to resolve under R.C. 2505.02(B)(2), is whether the Fischers met their burden to demonstrate that personal jurisdiction exists over the Texas residents in this particular case with the evidence presented at the ex parte trial. *See State ex rel. DeWine,* 2012-Ohio-3339, at ¶ 15 (9th Dist.), quoting *Barile*, 2 Ohio App.3d 233, 234, fn. 2 (8th Dist. 1981). The validity of the forum-selection clause in the contract does not answer the question whether the requisite minimum contacts with Ohio have been demonstrated for the purposes of invoking the trial court's jurisdiction over the defendants.

{¶ 25} The Fischers' appellate argument focuses on the validity of the forum-selection clause, and their brief in opposition to Orta's motion to dismiss focused solely on Ohio's long-arm statute. No arguments have been presented demonstrating that the defendants have the requisite minimum contacts with Ohio satisfying the constitutional concerns. In order to provide relief, this panel would be required to impermissibly provide authority and arguments under the minimum-contacts test in favor of reversing the trial court's decision on an issue not presented below. *In re Estate of Wearn*, 2023-Ohio-3152, ¶ 22 (8th Dist.). This is beyond our purview. It is not the role of an appellate court to flush out or create legal analysis

on behalf of one of the parties and certainly not for the first time in an appeal. *State v. Quarterman*, 2014-Ohio-4034, ¶ 19.

{¶ 26} Because the validity of the forum-selection clause is not relevant to the question of the defendants' minimum contacts with Ohio, and that is the sole argument presented for review, we cannot conclude that the trial court erred in dismissing the case for the lack of personal jurisdiction.  The Fischers had the burden of demonstrating that the defendants' contacts with Ohio met the minimum constitutional threshold, and that burden was not met by the arguments preserved and advanced in this appeal.

{¶ 27} As a result, we affirm.

{¶ 28} Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
ANITA LASTER MAYS, J., CONCUR