[Cite as *Tsirikos-Karapanos*, 2017-Ohio-8487.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 105422

## DR. NIKOLAOS TSIRIKOS-KARAPANOS

PLAINTIFF-APPELLANT

vs.

## FORD MOTOR COMPANY, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-854745

**BEFORE:** Boyle, J., Kilbane, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** November 9, 2017

**ATTORNEYS FOR APPELLANT**

James E. Boulas
Jim Petropouleas
James E. Boulas Co., L.P.A.
Raintree Plaza
7912 Broadview Road
Broadview Heights, Ohio   44147


**ATTORNEYS FOR APPELLEES**

**For Ford Motor Company**

Paul D. Hudson
277 South Rose Street, Suite 5000
Kalamazoo, Michigan   49007

Jeremiah J. Wood
Baker & Hostetler, Inc.
200 Civic Center Drive, Suite 1200
Columbus, Ohio   43215-4138

**For Valley Ford Truck, Inc.**

James J. Imbrigiotta
William H. Kotar
Glowacki & Imbrigiotta, L.P.A.
7550 Lucerne Drive, Suite 408
Middleburg Heights, Ohio   44130

Colleen A. Mountcastle
Michael J. Pike
Leslie A. Stanard
Gallagher & Sharp
Bulkley Building, Sixth Floor
1501 Euclid Avenue
Cleveland, Ohio   44115

MARY J. BOYLE, J.:

{¶1} Plaintiff-appellant, Nikolaos Tsirikos-Karapanos, ("appellant") appeals from a judgment of the trial court granting summary judgment to defendants-appellees, Ford Motor Company ("Ford") and Valley Ford Truck, Inc. ("VFT"). In his sole assignment of error, appellant argues that the trial court's grant of summary judgment to the appellees was in error because there exists genuine issues of material facts and, thus, the trial court could not grant summary judgment as a matter of law. Finding no merit to appellant's appeal, we affirm the judgment of the trial court.

## I. Factual Background and Procedural History

{¶2} Appellant leased a new 2014 Ford Explorer from VFT on September 28, 2013. Almost two years later, on July 14, 2015, appellant brought the vehicle to VFT to fix a cowl leak near the windshield that allowed water to seep into the vehicle. According to its invoice, VFT replaced and tested the cowl seal, removed and replaced the floor mats and carpets, and cleaned and removed mold from the wire harnesses under the dashboard. After VFT completed those repairs, appellant left in the vehicle. Because those repairs were covered by warranty, VFT did not charge appellant for those services.

{¶3} According to appellant, the vehicle continued to smell of mold and mildew despite those repairs. Appellant, however, did not return the vehicle to VFT to address the issue. Instead, on September 15, 2015, appellant contacted Ford, informed it that the

vehicle still smelled of mold and mildew, and requested that it replace the vehicle. Ford denied appellant's request.

**{¶4}** As a result, on November 21, 2015, appellant filed a complaint in the Cuyahoga County Court of Common Pleas against VFT and Ford. Appellant's complaint contained six causes of action, including a violation of Ohio's Products Liability Act, breaches of warranty, violations of the Consumer Sales Practices Act, and an award for punitive damages.

**{¶5}** Both VFT and Ford subsequently moved for summary judgment, arguing that appellant failed to establish the requisite elements for his claims. The trial court granted the appellees' motions for summary judgment. It is from this judgment that appellant appeals.[1]

## II. Law and Analysis

**{¶6}** In his sole assignment of error, appellant argues that the trial court erred in awarding the appellees summary judgment for all six causes of action.

**{¶7}** An appellate court reviews a trial court's decision to grant summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). De novo review means that this court independently "examine[s] the evidence to determine if as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997),

---

[1] We will discuss specific facts related to appellant's assignment of error more fully in the body of this opinion.

citing *Dupler v. Mansfield Journal*, 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980). In other words, we review the trial court's decision without according the trial court any deference. *Smith v. Gold-Kaplan*, 8th Dist. Cuyahoga No. 100015, 2014-Ohio-1424, ¶ 9, citing *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 699 N.E.2d 534 (8th Dist.1997).

{¶8} Under Civ.R. 56(C), summary judgment is properly granted when (1) "there is no genuine issue as to any material fact"; (2) "the moving party is entitled to judgment as a matter of law"; and (3) "reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made[.]" *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). Because it ends litigation, courts should carefully award summary judgment only after resolving all doubts in favor of the nonmoving party and finding that "reasonable minds can reach only an adverse conclusion" against the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

{¶9} "The burden of showing that no genuine issue exists as to any material fact falls upon the moving party. Once the moving party has met his burden, it is the non-moving party's obligation to present evidence on any issue for which that party bears the burden of production at trial." *Robinson v. J.C. Penney Co.*, 8th Dist. Cuyahoga Nos. 62389 and 63062, 1993 Ohio App. LEXIS 2633, *14 (May 20, 1993), citing *Harless* and *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991). "The moving party is entitled to summary judgment if the nonmoving party fails to

establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Brandon/Wiant Co. v. Teamor*, 125 Ohio App.3d 442, 446, 708 N.E.2d 1024 (8th Dist.1998), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

{¶10} "An otherwise competent affidavit is not invalid for the sole reason that it is executed by a party and submitted to aver facts in opposition to summary judgment." *Telecom Acquisition Corp. I v. Lucic Ents.*, 8th Dist. Cuyahoga No. 102119, 2016-Ohio-1466, ¶ 92. Nevertheless, a court may find that an affidavit is not competent and not sufficient to avoid summary judgment if it is not based on personal knowledge or supported by corroborating materials. *Id.*; *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 42, quoting *Davis v. Cleveland*, 8th Dist. Cuyahoga No. 83665, 2004-Ohio-6621.

**A. Products Liability Act**

{¶11} Appellant argues that the trial court improperly granted summary judgment for his first cause of action, a claim under the Ohio Products Liability Act. In response, the appellees argue that summary judgment was proper because appellant failed to present evidence of noneconomic damages. Because the appellees' argument is based on the element of noneconomic damages necessary for a products liability action, we will focus our analysis to that element alone.[2]

---

[2] Additionally, a plaintiff asserting a products liability action must establish that "(1) there was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendants; and (3) the defect was the direct and proximate

{¶12} To sustain a products liability claim, R.C. 2307.71(M) requires a plaintiff to set forth "a claim seeking compensatory damages for 'death, physical injury to person, emotional distress, or physical damage to property *other than the product in question*.'"[3] (Emphasis added.) *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Ents.*, 4th Dist. Ross No. 14CA3449, 2015-Ohio-4884, ¶ 32, quoting R.C. 2307.71(A)(13). A plaintiff cannot sustain a product liability claim on economic damages alone. *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 30; *see also LaPuma v. Collinwood Concrete*, 75 Ohio St.3d 64, 66, 661 N.E.2d 714 (1996) ("Ohio's product liability statutes, by their plain language, neither cover nor abolish claims for purely economic loss caused by defective products."). Economic damages include "direct, incidental, or consequential pecuniary loss, including, but not limited to, damage to the product in question[.]" R.C. 2307.71(A).

{¶13} In *Caterpillar,* the court found that the complaint's product liability claim did not fall under the Ohio Products Liability Act because the plaintiffs sought "economic loss – i.e., damage to the value of the alleged defective grinder and consequential

cause of the plaintiff's injuries or loss." *State Farm Fire & Cas. Co. v. Chrysler Corp.*, 37 Ohio St.3d 1, 6, 523 N.E.2d 489 (1988).

[3] In their briefs, the appellees argue that appellant's statements are not enough to qualify as "serious emotional distress"; however, the appellees mistakenly cite to R.C. 2307.71(A)(7), defining "harm." The appellees failed to recognize that R.C. 2307.71(A)(13), which defines "product liability claim," only requires "emotional distress." While "serious emotional distress" and the seemingly lesser standard of "emotional distress" are certainly different based on the statute's plain language, that distinction makes no difference in this case because appellant claims a noneconomic loss of physical injury, not emotional injury.

damages therefrom[.]" *Caterpillar* at ¶ 32. Like the plaintiffs in that case, appellant only alleges economic loss, stating that because his vehicle was "contaminated with mold and continues to smell of mold and mildew[,]" he lost the use and value of the vehicle as well as money to obtain alternative travel methods.

{¶14} Appellant also alleges that he created a genuine issue of material fact by way of his affidavit — attached to his motion in opposition to summary judgment, which states, "the Vehicle remains contaminated with mold which creates a significant health hazard for myself, my wife and our two young daughters." Additionally, in his brief, appellant bolsters his claim, stating that his family "has experienced an increased occurrence of illness over the past year and a half."

{¶15} Appellant's statements seem to allege damages related to physical injury, even though he argues it is proof of emotional distress. Either way, however, appellant's self-serving statements are not enough to establish the existence of either type of noneconomic damages. *See Burks v. Torbert*, 8th Dist. Cuyahoga No. 91059, 2009-Ohio-486, ¶ 20 (holding that a self-serving affidavit is not enough to establish emotional injury); *Finley v. First Realty Property Mgt.*, 185 Ohio App.3d 366, 2009-Ohio-6797, 924 N.E.2d 378, ¶ 38 (9th Dist.) (finding that the appellants failed to establish an essential element of their case because they merely asserted "that they have 'suffered severe emotional distress' without any further elaboration or associated evidence supporting the same. * * * [T]he affidavits proffered only a generalized, non-specific statement that Tenants suffered emotional distress[.]"); *Bogner v. Titleist*

*Club, L.L.C.*, 6th Dist. Wood No. WD-06-039, 2006-Ohio-7003, ¶ 16 ("[A]ppellants merely opined in deposition testimony that they suffered various medical conditions and injuries as a result of living in the apartment. They failed to submit any expert opinions, however, which established a causal connection between their medical symptoms and their alleged exposure to mold."). Appellant failed to properly introduce any corroborating evidence supporting his self-serving claim of physical injury or emotional distress, such as doctor's notes, hospital stays, medication receipts, or expert opinions.

{¶16} Furthermore, appellant's affidavit is not sufficient to establish that the alleged mold caused his family's increased physical illnesses. *See Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, 875 N.E.2d 72, ¶ 31 ("[E]xpert medical testimony is necessary to establish that particular types of mold found in the workplace were the specific cause of the claimants' ailments.").

{¶17} Because appellant has not presented sufficient evidence to establish that his product liability claim seeks more than economic loss or that any noneconomic damages were actually caused by exposure to harmful mold, he has failed to establish one of the necessary elements for his claim.

### B. Magnuson-Moss Warranty Act/ Breach of Warranty

{¶18} Appellant also argues that the trial court improperly awarded the appellees summary judgment as to his breach of warranty claim. In response, Ford argues that summary judgment was proper because appellant did not afford it a reasonable

opportunity to cure the alleged defects.    VFT argues that appellant has failed to establish that it breached an express warranty.

**{¶19}** "The Magnuson-Moss Act is the federal statute that sets forth guidelines, procedures and requirements for warranties, written or implied, on consumer products." *Temple v. Fleetwood Ents., Inc.*, 133 Fed.Appx. 254, 268 (6th Cir.2005), citing 15 U.S.C. 2301-2312.   "The Act establishes a federal right of action for consumers to enforce written or implied warranties against suppliers, warrantors, or service contractors."   *Whitt v. Mazda Motor of Am., Inc.*, 5th Dist. Stark No. 2010CA00343, 2011-Ohio-3097, ¶ 23.

**{¶20}** To have a valid claim under the Magnuson-Moss Act, a party first needs to sustain a claim for breach of an express or implied warranty.   *LaBonte v. Ford Motor Co.*, 8th Dist. Cuyahoga No. 74855, 1999 Ohio App. LEXIS 4795, *18 (Oct. 7, 1999); *see also Brown v. Cincyautos, Inc.*, S.D.Ohio No. 1:08cv372, 2009 U.S. Dist. LEXIS 82721, *16 (Sept. 8, 2009) ("The elements of a violation of the Magnuson Moss Act are the same as for a breach of warranty.").   To establish a breach of warranty, a party must show that a warranty and defect existed and that it afforded the warrantor a reasonable number of attempts to fix the defect.   *Whitt* at ¶ 24; *Sharkus v. Daimler Chrysler Corp.*, 8th Dist. Cuyahoga No. 79218, 2002-Ohio-5559, ¶ 11.

**{¶21}** While the parties disagree on whether appellant afforded the appellees a reasonable number of attempts to cure, we find it unnecessary to resolve those disputes

because there was no evidence that (1) Ford warranted that the car was mold free or an express warranty made by VFT could be imputed to Ford, or (2) a defect actually existed.

{¶22} First, appellant's breach of warranty claim against Ford fails because Ford did not expressly warrant that the car was free of mold, and appellant failed to set forth the requisite proof of an agency relationship between VFT and Ford.[4] Appellant is correct that "[u]nder the doctrine of respondeat superior, a principal is vicariously liable for acts of its agent committed within the scope of the agency." *Ryan v. Ambrosio*, 8th Dist. Cuyahoga No. 91036, 2008-Ohio-6646, ¶ 29. Accordingly, an agency relationship must exist for the doctrine of respondeat superior to apply. Based on his brief, it seems that appellant's argument is that an apparent agency relationship existed between Ford and VFT.

> In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.

---

[4] In the interest of judicial economy, we will only address the arguments raised on appeal. In discovery, Ford disclosed a 36-page handbook expressly providing certain warranties for the vehicle. Even though appellant asserted a cause of action based on "Ford's representations to the plaintiff that it would provide warranty coverage and repair for any defects and/or workmanship on the Vehicle[,]" appellant, both at trial and on appeal, has not challenged the trial court's granting of summary judgment for any alleged breach of those warranties before this court. Appellant solely argues that it was improper for the trial court to grant summary judgment for the claim concerning VFT's express warranty that the vehicle was free of mold. Thus, per App.R. 12 and 16, we will not address any argument concerning an expressed warranty that Ford may have given in the provided handbook.

*Apex Sales Agency, Inc. v. Mather Co.,* 8th Dist. Cuyahoga No. 60344, 1992 Ohio App. LEXIS 5944, *12 (Nov. 19, 1992), quoting *Master Consol. Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570, 575 N.E.2d 817 (1991); *see also Kaplan Trucking Co. v. Grizzly Falls Inc.*, 8th Dist. Cuyahoga No. 104148, 2017-Ohio-926, ¶ 33, quoting *Miller v. Wick Bldg. Co.*, 154 Ohio St. 93, 93 N.E.2d 467 (1950) (holding that an apparent agency may exist when "the principal has by his words or conduct caused the third party to reasonably believe that the agent had the requisite authority to bind the principal."). "The test for apparent authority is whether the complaining party 'acting as a reasonable person, would believe the agent had authority based on all the circumstances.'" *Kaplan* at ¶ 33, quoting *Young v. Internatl. Bhd. of Locomotive Engineers*, 114 Ohio App.3d 499, 683 N.E.2d 420 (8th Dist.1996). "The burden of proving that apparent agency exists rests upon the party asserting the agency." *Apex* at *12, citing *Irving Leasing Corp. v. M & H Tire Co.,* 16 Ohio App.3d 191, 475 N.E.2d 127 (2d Dist.1984).

{¶23} Here, appellant argues that an apparent agency relationship existed because Ford held VFT out as its authorized agent and that "all warranty work is performed by Ford through its authorized dealers." But appellant failed to establish that relationship because he offered no proof supporting those allegations.

{¶24} Further, it is a "well-accepted principle that there is no privity between a vehicle's manufacturer and the ultimate consumer because the dealer, generally, does not act as the manufacturer's agent." *Nicholson v. Jayco, Inc.*, N.D.Ohio No. 5:15-cv-2010, 2016 U.S. Dist. LEXIS 134469 (Sept. 29, 2016). "[O]ne who receives goods from

another for resale to a third person is not thereby the other's agent in the transaction: whether he is an agent * * * depends upon whether the parties agree that his duty is to act primarily for the benefit of the one delivering the goods to him or * * * for his own benefit." *Curl v. Volkswagen of Am., Inc.,* 114 Ohio St.3d 266, 2007-Ohio-3609, 871 N.E.2d 1141, ¶ 33.

{¶25} In *Curl*, the Ohio Supreme Court rejected the plaintiff's agency argument, finding that the dealership sold the vehicle primarily for its own benefit and, therefore, agency law did not create the privity necessary to sustain plaintiff's claim. *Id.* Likewise, in *Nicholson*, the court found that the plaintiffs "advance[d] no evidence of any sort that Jayco exercised the requisite control over MHS that would transform MHS from a mere authorized dealer of Jayco products into an agent." *Nicholson* at *53. Contrary to the appellant's claims, the court concluded that the dealer was "nothing more than an authorized dealer of Jayco products." *Id.*

{¶26} *Curl* and *Nicholson* are dispositive of appellant's breach of warranty claim against Ford based on agency principles. As stated in *Curl*, simply because VFT sold a vehicle manufactured by Ford does not automatically create an agency relationship. Further, while appellant argues that "Ford held Valley Ford out to be its authorized agent for sales and service of Ford branded motor vehicles" and that "all warranty work is performed by Ford through its authorized dealers[,]" appellant, like the plaintiff in *Nicholson*, cites to no proof supporting his allegations of an agency relationship. Appellant did not depose an official or employee of Ford or VFT, and he did not set forth

any documents or statements by Ford certifying an agency relationship. Therefore, VFT was not Ford's agent, and appellant cannot attribute VFT's express warranty that the car was mold free and any alleged breach of that warranty to Ford.

{¶27} Second, and even more dispositive of appellant's second cause of action, is the fact that appellant has failed to establish the existence of a defect. In *Robinson*, 8th Dist. Cuyahoga Nos. 62389 and 63062, 1993 Ohio App. LEXIS 2633, *26, the appellant sued the appellee, an escalator manufacturer, for injuries he allegedly sustained due to a defective escalator. In support of his claim that the escalator was defective, the appellant attached an affidavit to his motion in opposition to summary judgment, claiming that a store employee indicated to the appellant that the escalator was broken. Nevertheless, we affirmed the trial court's grant of summary judgment because other than the plaintiff's own statement containing "a self-serving hearsay comment" there was an utter lack of evidence to establish that a defect actually existed. *Id.*

{¶28} Similarly, in *Brown*, S.D.Ohio No. 1:08cv372, 2009 U.S. Dist. LEXIS 82721 (Sept. 8, 2009), the appellant argued that the appellee, a car dealership, breached its warranty by failing to fix her vehicle within a reasonable number of attempts. The trial court granted summary judgment to the appellees. On appeal, the court affirmed the trial court's judgment, finding that the appellant failed to create a genuine issue of material fact as to the existence of a defect. The court stated, "Although it is uncontested that [the appellant] had to have the Jeep repaired, there is no evidence that

the problems were not corrected and no evidence that they were not corrected in a timely fashion." *Id.* at *12-13.

**{¶29}** Here, appellant offers no evidence — expert reports or opinions, scientific test results, etc. — to establish that a defect, the mold, existed or was harmful. Like *Robinson* and *Brown*, appellant's self-serving allegations are not enough to establish the existence of mold. Specifically, appellant's affidavit fails to act as competent evidence in support of his motion in opposition because appellant had no personal knowledge of the mold. *See* Civ.R. 56(E) ("Supporting and opposing affidavits shall be made on personal knowledge."); *Telecom Acquisition Corp. I,* 8th Dist. Cuyahoga No. 102119, 2016-Ohio-1466, at ¶ 92, citing *Wolf v. Big Lots Stores, Inc.*, 10th Dist. Franklin No. 07AP-511, 2008-Ohio-1837 ("[A] party's affidavit is competent to create a genuine issue of material fact if made on personal knowledge."); *Wolf* at ¶ 12 (holding that an affidavit filed in opposition to summary judgment "must be made on personal knowledge, set forth facts admissible in evidence, and affirmatively demonstrate that the affiant is competent to testify on the matters set forth in the affidavit"). During the deposition of appellant, the following exchange took place:

MR. PIKE: And — and prior to August of 2016, you hadn't observed any mold in your Ford Explorer, correct?

APPELLANT: Not observed, but we were smelling the —

MR. PIKE: I understand you had a smell, but I'm asking —

APPELLANT: — smell

MR. PIKE: — whether you saw or observed —

APPELLANT: No, I did not.

MR. PIKE: And even at the time that the water got into the vehicle the second time, there wasn't immediately mold in the vehicle, correct, that — that you — that you saw? * * *

APPELLANT: See, if you ask me — well, depends how you define this. You ask me if I — I had visual —

MR. PIKE: Yeah. I'm asking —

APPELLANT: — proof?

MR. PIKE: — if — if you saw mold in the vehicle —

APPELLANT: I could smell it. I could smell it. Mold smells too.

MR. PIKE: So the answer to my question, though, is you did not observe * * * any mold in the vehicle even up to the point where you had the second intrusion of water into the vehicle * * * right? Did you see mold anywhere in the vehicle when you notice the water there for the second time?

APPELLANT: I didn't see mold even the first time when mold was identified by Valley Ford. * * * I didn't see this — the mold then, and I didn't see the mold in summer 2016, but I was smelling mold. * * * I was suspecting that there was mold. * * * I didn't see it.

{¶30} The above testimony shows that appellant admitted that he never saw mold in the vehicle, either before or after VFT made its repairs. It also shows that appellant based his allegations on his detection of a smell in the vehicle, which he assumed to be mold.[5] A mere smell in the vehicle is not enough to establish that mold was present in

_____

[5] Although the vehicle's alleged smell could arguably have breached the implied warranties of fitness for a particular purpose and merchantability, appellant failed to assert any causes of action

the vehicle, especially considering the fact that in other cases concerning mold, such as toxic tort cases, parties are expected to and consistently do retain experts and other professionals to test whether mold exists and is harmful. *See Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App.3d 23, 2008-Ohio-311, 884 N.E.2d 1130, ¶ 5-6 (8th Dist.) (discussing that the plaintiffs retained two different experts to test for mold); *Kleinholz v. Goettke*, 173 Ohio App.3d 80, 2007-Ohio-4880, 877 N.E.2d 403, ¶ 8 (1st Dist.) (holding that the plaintiffs needed to obtain an expert to testify that the mold in their home was harmful to sustain their claims because "the issue whether the types of mold found in [their] home was harmful was not a matter of common knowledge").

{¶31} Appellant also referenced an expert report at oral argument in support of the existence of mold. While appellant did retain an expert and submit the expert's report to the court, the trial court determined that appellant failed to abide by the trial court's deadlines and ultimately struck it from the record. Therefore, the expert report is not part of the record, cannot support appellant's motion in opposition, and will not be considered by this court on appeal. Further, appellant did not assert on appeal as error the court's decision to strike appellant's expert report.

{¶32} Additionally at oral argument, appellant referenced photographs of the alleged mold that were attached to his motion in opposition to summary judgment in support of his argument that there was mold in the vehicle. But "[a] picture cannot be

---

for those implied warranties or raise any arguments in relation to implied warranties on appeal. Therefore, per App.R. 12 and 16, we will not address any issues related to implied warranties.

admitted without a proper foundation.   There must be testimony that the photograph is a fair and accurate representation of that which it represents."   *Heldman v. Uniroyal, Inc.*, 53 Ohio App.2d 21, 31, 371 N.E.2d 557 (8th Dist.1977).   "Any person with knowledge may authenticate a photograph by testifying that it fairly and accurately depicts the subject at the time the photograph was taken."   *State v. Wynn*, 8th Dist. Cuyahoga No. 103824, 2017-Ohio-4062, ¶ 52; *see also Andrews v. Riser Foods*, 8th Dist. Cuyahoga No. 71658, 1997 Ohio App. LEXIS 4650, *9 (Oct. 16, 1997) ("A crime scene photograph was properly authenticated when an officer at the scene testified the photograph accurately depicted the crime scene.").

{¶33} Accordingly, for the photographs to be admissible and properly considered by this court on appeal, appellant had to properly authenticate the photographs through testimony that asserted them to be fair and accurate depictions of the mold in the vehicle.  Appellant, however, did not submit an affidavit, and as a result, he failed to lay the proper foundation for the photographs to be admissible as evidence and properly considered on appeal.   Therefore, without the expert report and photographs and left with his self-serving statements alone, appellant has no competent evidence to show that mold was actually in the vehicle, which is necessary for his breach of warranty claim. Therefore, the trial court's grant of summary judgment is proper.

**C. Consumer Sales Practices Act**

{¶34} Appellant also asserts that the trial court improperly awarded the appellees summary judgment for his causes of action under the Ohio Consumer Sales Practices Act.

Ford and VFT argue that summary judgment was proper because appellant failed to produce evidence that they engaged in unfair or deceptive practices.

{¶35} The Ohio Consumer Sales Practices Act, R.C. Chapter 1345, protects consumers from suppliers' deceptive or unconscionable sales practices. *Richards v. Beechmont Volvo*, 127 Ohio App.3d 188, 190, 711 N.E.2d 1088 (1st Dist.1998), citing *Thomas v. Sun Furniture & Appliance Co.*, 61 Ohio App.2d 78, 399 N.E.2d 567 (1st Dist.1978). "It is a remedial act that courts must liberally construe in favor of the consumer." *Id.*, citing *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 548 N.E.2d 933 (1990).

{¶36} "A CSPA claim will not be successful unless the [supplier's] performance amounted to a deceptive, unfair, or unconscionable act." *Warren v. Denes Concrete, Inc.*, 9th Dist. Lorain Nos. 08CA009414 and 08CA009422, 2009-Ohio-2784, ¶ 23, citing *Tucker Constr.*, *Inc. v. Kitchen*, 9th Dist. Summit No. 16636, 1995 Ohio App. LEXIS 812 (Mar. 1, 1995). "[T]he CSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving, while 'unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 24.

{¶37} "[A] consumer is not required to demonstrate that a supplier intended to be unfair or deceptive." *Frey v. Vin Devers, Inc.*, 80 Ohio App.3d 1, 6, 608 N.E.2d 796 (6th Dist.1992), citing *Thomas*. Rather, whether an act is deceptive or unfair depends on

how the consumer viewed the supplier's act or statement. *Id.*, citing *Brown v. Bredenbeck*, Franklin C.P. No. 74CV-09-3493, 1975 Ohio Misc. LEXIS 124 (July 24, 1975). Therefore, "if the supplier does or says something, regardless of intent, which has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts, the act or statement is deceptive." *Id.*

{¶38} Courts recognize that breaches of contract or warranty can constitute violations of the Consumer Sales Practices Act. *See Temple*, 133 F.Appx. 254, 266, citing *Boyle v. Daimler Chrysler Corp.* 2d Dist. Clark No. 2001-CA-81, 2002-Ohio-4199; *Davis v. Hawley Gen. Contr., Inc.*, 6th Dist. Huron No. H-14-018, 2015-Ohio-3798, ¶ 19, quoting *Cartwright v. Beverly Hills Floors*, 7th Dist. Mahoning No. 11 MA 109*, 2013-Ohio-2266 ("[N]ot every breach of contract constitutes a CSPA violation, however 'when a supplier knowingly commits a breach, the breach is likely also an unfair or deceptive act.'"); *Brown v. Lyons*, 43 Ohio Misc. 14, 332 N.E.2d 380 (C.P.1974) ("Ohio courts have held that a manufacturer's failure to repair a defect covered by a warranty can amount to a violation of the CSPA."). Unsubstantiated allegations of deceptive practices, however, are not enough to establish a Consumer Sales Practices Act violation and avoid summary judgment.

{¶39} In *Temple*, the appellants sued the manufacturer of their motor home, claiming that it violated the Consumer Sales Practices Act by making false representations about the motor home's engine. The trial court awarded the manufacturer summary judgment. On appeal, the court found that the appellants failed

to present sufficient evidence that the manufacturer actually made false representations. As a result, the court affirmed the trial court's granting of summary judgment. *Temple* at 267-268.

**{¶40}** Here, as already discussed above, appellant sets forth no proof — besides his uncorroborated, self-serving statements and references to an expert report stricken from the record and photographs improperly submitted in support of his motion in opposition to summary judgment — that VFT's representations that the vehicle was mold free were false or not in accord with the facts. In other words, even if VFT actually made the representations that appellant alleges in his appellate brief, appellant has failed to show that those representations were actually untrue — he has not sufficiently shown that mold actually existed in the vehicle after VFT serviced and returned the vehicle and represented that it was free of mold. As we stated before, while a self-serving affidavit may serve as competent evidence to overcome summary judgment, the affidavit must be made on personal knowledge. *See Telecom Acquisition Corp. I*, 8th Dist. Cuyahoga No. 102119, 2016-Ohio-1466, at ¶ 92. Here, appellant testified that he never saw mold either before or after VFT repaired the vehicle; instead, appellant bases his assertions on the vehicle's smell, which again, without more, is not enough to establish the presence of mold.

**{¶41}** Appellant also argues that the appellees breached their warranties and, therefore, violated the Consumer Sales Practices Act. For the same reasons set forth above, we find that the appellees did not breach a warranty because, again, appellant has

failed to prove the existence of a defect. Appellant has not sufficiently proven a deceptive practice or false representation made by either appellee, which is required to sustain a claim under the Consumer Sales Practices Act. Therefore, the trial court's grant of summary judgment was proper.

### D. Punitive Damages

{¶42} Finally, appellant argues the trial court's grant of summary judgment to the appellees was improper for his cause of action for punitive damages because the appellees acted with actual malice. In response, Ford and VFT argue that appellant failed to present evidence of actual malice to support his punitive damages claim. Based on our foregoing analysis and conclusion that summary judgment for appellant's underlying claims was proper, however, we find it unnecessary to determine whether a genuine issue of material fact exists as to the question of actual malice and punitive damages.

{¶43} R.C. 2315.21, captioned "Punitive or exemplary damages," states that "punitive or exemplary damages are not recoverable from a defendant in question in a tort action unless * * * [t]he actions or omissions of that defendant demonstrate malice[.]" *See also Calmes v. Goodyear Tire & Rubber Co.*, 61 Ohio St.3d 470, 473, 575 N.E.2d 416 (1991) ("Punitive damages in this state are available upon a finding of actual malice."). "[A]ctual malice is present where the defendant possessed either (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Cabe v. Lunich*, 70 Ohio St.3d 598, 601,

640 N.E.2d 159 (1994). "[P]unitive damages are intended to punish and deter conduct resulting from a mental state so callous in its disregard for the rights and safety of others that society deems it intolerable." *Calmes* at 473, citing *Preston v. Murty*, 32 Ohio St.3d 334, 335, 512 N.E.2d 1174 (1987). "Since punitive damages are assessed for punishment and not compensation, a positive element of conscious wrongdoing is always required. This element has been termed conscious, deliberate or intentional." *Preston* at 335. In other words, a plaintiff must show "[s]omething more than mere negligence[.]" *Cabe* at 602; *see also Preston* at 335; *Lang v. Beachwood Pointe Care Ctr.*, 8th Dist. Cuyahoga No. 104691, 2017-Ohio-1550, ¶ 53.

{¶44} Here, appellant argues that "Valley Ford shrugged off and Ford ignored appellant's request for a replacement vehicle and never requested that appellant present the Explorer for further cleaning thereby demonstrating 'a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.'" We need not analyze whether VFT and Ford shrugged off and ignored appellant's request because a "civil cause of action in this state may [not] be maintained simply for punitive damages." *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, 912 N.E.2d 595, ¶ 13, quoting *Bishop v. Grdina*, 20 Ohio St.3d 26, 485 N.E.2d 704 (1985). The trial court properly disposed of appellant's underlying claims via summary judgment, and appellant may not maintain his punitive damages claim alone. Therefore, the trial court's granting of summary judgment as to appellant's final cause of action was proper.

**{¶45}** Based on the record before us, the trial court properly awarded the appellees summary judgment as to all of appellant's causes of action because no genuine issues of material fact existed and reasonable minds could come to but one conclusion, finding in favor of the appellees. Accordingly, appellant's sole assignment of error is overruled.

**{¶46}** Judgment affirmed.

It is ordered that appellees recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, JUDGE

MARY EILEEN KILBANE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR