[Cite as *Richard v. CarMax*, 2023-Ohio-2066.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

RESHONDA RICHARD,                    :

     Plaintiff-Appellant,              :

                              No. 112108

     v.                               :

CARMAX,                              :

     Defendant-Appellee.              :

JOURNAL ENTRY AND OPINION

**JUDGMENT:**   AFFIRMED
**RELEASED AND JOURNALIZED:**  June 22, 2023

Civil Appeal from the Bedford Municipal Court
Case No. 22 CVF 01881

***Appearances:***

Reshonda Richard, *pro se.*

Weston Hurd LLP, Matthew C. Miller, and Robert A. Poklar, *for appellee.*

MICHELLE J. SHEEHAN, J.:

{¶ 1}   Plaintiff-appellant Reshonda Richard appeals from a judgment of the Bedford Municipal Court in favor of defendant-appellee CarMax. Richard purchased a used 2012 Mazda vehicle in 2020 from CarMax. The vehicle's power

transfer unit was covered under an extended warranty from Mazda, which appeared to have expired by the time Richard purchased the vehicle. She claimed CarMax violated the federal Magnuson-Moss Warranty Act and Ohio's Lemon Law in selling her a vehicle with a defective part. After a bench trial, the municipal court found in favor of CarMax. On appeal, Richard failed to make the trial transcript part of the appellate record, and her appellate brief failed to conform to the Rules of Appellate Procedure. The nonconformity with the appellate rules and the lack of the transcript hinders our ability to evaluate the trial court's judgment, and we are within our authority to summarily overrule the assignments of error raised. As we explain in the following, even if we review her appeal based on the record before us, we would find the appeal to be without merit.

**The Complaint**

{¶ 2} Richard filed a complaint, pro se, in Bedford Municipal Court in May 2022 against CarMax. The complaint concerns a 2012 Mazda CX-9 she purchased from CarMax on June 5, 2020. She alleged that when she drove the vehicle off CarMax's lot, she noticed a squealing sound emitting from the front of the vehicle. She called the manager, who advised her to bring the vehicle back; upon an inspection, a service representative informed her that "that was just the sound that Mazda's make, and it was fine."

{¶ 3} Not satisfied with the response, in August 2020, she took the vehicle to a mechanic at Christian Brothers' Auto Care. The mechanic heard the "squeaking" and replaced a tire. The problem was not fixed, however. Richard then

took the vehicle to Mazda of Kent.  The dealership made some repairs, but the problem remained.  She then took the vehicle to Mazda of Brook Park.  They made certain repairs, but the problem persisted.  She subsequently contacted CarMax and informed it that she still heard the noises.[1]  She alleged she was told to bring the vehicle back and look for a replacement vehicle.  A suitable replacement could not be found, and she was told by CarMax the problem would be fixed, but it never got fixed.  She then asked to return the vehicle, but by then the time for returning the vehicle had expired.  She took the vehicle to a Midas store in Brook Park and was advised she should take the vehicle to Mazda of Brook Park for repairs, but the Mazda dealership did not fix the problem.

{¶ 4}  Richard alleged that in February 2022, she was driving on the highway when the vehicle made a loud squealing noise and would not move forward, and she had the vehicle towed to her home.  Midas inspected the vehicle and found that the transfer case of the vehicle had broken.  She then took the vehicle to Gary's Auto and learned that the noise she had been hearing was from the transfer case.  She contacted CarMax and was told that the warranty that came with the purchase of the vehicle had expired based on the mileage limit.  Richard paid for the repair of the transfer case but discovered later from her own research that the vehicle was under a recall from Mazda for the transfer case.  Richard alleged that "CarMax was

_____

[1] The complaint did not specify the time of her contact with CarMax.  In the reply brief, she alleges this communication took place on September 26, 2020.

made aware of this [recall] by the manufacturer when they were sold the car by the original owner." She claimed that CarMax should have repaired the transfer unit before selling the vehicle to her. She sought damages in the amount of $15,000 for the balance of the purchase price ($8,000), repair of the transfer case ($2,000), additional repairs ($2,600), and pain and suffering ($2,400).

{¶ 5} Richard subsequently filed an "Amended claim." The amended complaint summarized the factual allegation as follows: "I have taken [the vehicle] to multiple mechanics within [CarMax's] network per the agreement [and] none could fix it[.] I then took it to one in my network and it was fixed. Upon fixing the damage of the car sold to me I found out it was under recall for the item I had just gotten repaired." The amended complaint alleged that CarMax violated (1) the Ohio Consumers Sales Practices Act, (2) the "Magnuson- Moss Warranty Act," and (3) the "Ohio's motor vehicle sales rule," which "makes it illegal for a car dealer to misrepresent practically any aspect of anything that is happening in your transaction, including the vehicle itself or any material aspect of it."

{¶ 6} In its answer, CarMax acknowledged the subject vehicle was sold with a limited written express warranty.

**Trial**

{¶ 7} The trial court held a bench trial on Richard's complaint in October 2022. The record before us does not contain a transcript of the trial, but it contains several exhibits submitted at the trial. Plaintiff's exhibit No. 5 is a document titled "Parts and Warranty Information/SSP92." Under the heading of WARRANTY

EXTENSION, the documents states that for its 2010-2015 CX-9 vehicles, "the warranty coverage for power transfer unit (PTU) replacement is extended to 7 years (84 months) from the original warranty start date or 90,000 miles, whichever comes first." It states that "[o]n some vehicles, when driving under high load or at high speeds, increased oil temperature inside the transfer unit may result in poor lubrication. * * * Continued driving under these conditions will cause the needle bearing to break, creating abnormal noise, damage to the PTU case and/or oil leakage.  Dealers are instructed replace the power transfer unit (PTU)."  On the face of the document, "SSP92" appears to be a warranty extension, not a recall, as Richard alleges.

{¶ 8}  Richard also submitted as  exhibits various repair orders from several auto shops but did not submit any exhibits showing she had taken the vehicle to CarMax for repair after her purchase of the vehicle.

{¶ 9}  The record before us also contains several exhibits submitted by CarMax.  Defendant's exhibit C is the Buyer's Order signed by Richard.  It shows that the odometer reading on the vehicle was 74,688 miles and that the vehicle is covered by CarMax's limited warranty for 90 days and 4,000 miles, whichever comes first.  While Richard alleged she purchased an extended warranty, CarMax alleged what she purchased was instead a service contract, which was submitted as

defendant's exhibit B.[2]  Defendant's exhibits D, E, and F show there were no unrepaired safety recalls for the vehicle reported by the National Highway Traffic Safety Administration or by AutoCheck, a company providing recall information.

{¶ 10} After the trial, the court issued a decision.  The court found judgment for the defendant but without analysis.  Richard appealed from the judgment pro se.[3]

**Appellate Nonconforming Brief**

{¶ 11} Richard's pro se brief on appeal does not comply with the requirements of the Rules of Appellate Procedure.  App.R. 16(A)(3) requires a "statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected."  App.R. 16(A)(7) requires the appellate brief to contain "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in

---

[2] Defendant's exhibit B is a document titled "Maxcare Service Contract" signed by a CarMax representative and Richard.  The service contract provides repair service for the vehicle for 48 months or 100,000 miles (whichever occurs first) for the price of $1,589, with a deductible of $300.  The provider/administrator is "Consumer Program Administrators, Inc.," which has a Chicago address.

[3] We note that Richard attached multiple documents as exhibits to her notice of appeal. This court struck these attachments pursuant to App.R. 9(A)(1), which provides that the original papers and exhibits filed in the trial court, the transcript of the proceedings, and the docket and journal entries shall constitute the record on appeal.  We explained that the exhibits solely appended to appellate filings are not properly part of the record and may not be considered on appeal. *Jefferson Golf & Country Club v. Leonard*, 10th Dist. Franklin No. 11AP-434, 2011-Ohio-6829, ¶ 34.

support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."

{¶ 12} Instead of stating an assignment of error with reference to the place in the record reflecting the error and an argument with citations to the authorities and statutes, Richard's brief contains a section with the heading of "Issue," which poses the following questions:

> At the time of contract CarMax had been made aware of the car being under voluntary recall by Mazda? Defendant had knowledge of the car needing this part replaced but failed to fix it? Defendant had been contacted by Plaintiff several times to have this problem fixed but defendant refused? Defendant refused to uphold warranty? The car had been taken to multiple repair shops for several issues from the first week of signing? Reshonda Richard (Plaintiff) bought an extended warranty to cover the vehicle up to 125,000 miles? CarMax (defendant) had the car for several months and did not have the car repaired nor did they advise Reshonda of the need to have it repaired breaching the warranty?

And, her legal argument comprises of the following sentences:

> The Lemon Law and the Magnuson-Moss Warranty Act state[] that cars being sold should not have to have multiple repairs within the first several months of purchase [and] all the above-mentioned repairs and auto shop visits happened within the first 6 months of ownership. The protection act states a consumer should have the car replaced or a full refund of purchase price should be made by the dealership, in this case CarMax ([defendant]).

{¶ 13} Even more problematic to Richard's appeal is her failure to make a transcript of the trial part of the appellate record as required by App.R. 9(B). The omission significantly limits our ability to review Richard's claims. "Where a party to an appeal fails to file portions of the transcript necessary for resolution of her assignments of error, the assignments will be overruled." *Univ. Hts. v. Johanan*,

8th Dist. Cuyahoga No. 110887, 2022-Ohio-2578, ¶ 12, citing *Lee v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 06AP-625, 2006-Ohio-6658, ¶ 10. The fact Richard was acting pro se could not excuse her failure to comply with App.R. 9. *Id.* at ¶ 11, citing *State Farm Mut. Auto. Ins. Co. v. Williams*, 8th Dist. Cuyahoga No. 107951, 2019-Ohio-4059, ¶ 31. "[A]bsent specific references to the record, we need not consider unsubstantiated assertions." *Id.* at ¶ 10, citing App.R. 12(A)(2). And, it would be within our authority to summarily overrule the claimed errors and affirm the trial court's judgment. *Id.,* citing *State v. Fisher*, 8th Dist. Cuyahoga No. 83098, 2004-Ohio-3123, ¶ 26, and *Marietta College v. Valiante*, 4th Dist. Washington No. 13CA12, 2013-Ohio-5405, ¶ 12. However, even if we were to review the appeal based on the record before us, we would find no merit to the appeal.

**No Merit to the Appeal Based on the Existing Record**

{¶ 14} In an appeal from a civil bench trial, we review the trial court's judgment under a manifest weight standard of review. *Barcy v. St. Vincent Charity Med. Ctr.*, 8th Dist. Cuyahoga No. 110584, 2022-Ohio-1064, ¶ 51; *Huntington Natl. Bank v. Slodov*, 8th Dist. Cuyahoga No. 110113, 2021-Ohio-2932, ¶ 47. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20 (the manifest-weight standard of review applies in civil as well as criminal cases). For this review, we are to examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the verdict must be overturned and a new

trial ordered. *Sonis v. Rasner*, 2015-Ohio-3028, 39 N.E.3d 871, ¶ 53 (8th Dist.), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 15} From what we can discern from Richard's pro se complaint and "Amended claim," the gist of Richard's allegation is that the vehicle's power transfer unit was subject to a recall by the manufacturer and CarMax's failure to have the unit repaired before selling it to her violates Ohio's Lemon Law and the federal Magnuson-Moss Warranty Act.

{¶ 16} Regarding Ohio's Lemon Law, R.C. 1345.72, the law is "designed to protect consumers from chronically defective new automobiles. It requires new vehicles to live up to warranties given by manufacturers. The Lemon Law attaches a clear duty to sellers, and provides a clear remedy to buyers should the seller breach its duty." *Royster v. Toyota Motor Sales, U.S.A.*, 92 Ohio St.3d 327, 328, 750 N.E.2d 531 (2001). Lemon Law coverage applies only to a vehicle during the first year or first 18,000 miles of operation, whichever is earlier. *Curl v. Volkswagen of Am., Inc.*, 114 Ohio St.3d 266, 2007-Ohio-3609, 871 N.E.2d 1141, ¶ 46. Richard purchased a 2012 vehicle in 2020. The Lemon Law is not applicable in this case.

{¶ 17} Regarding the Magnuson-Moss Warranty Act, "[t]he elements of a violation of the Magnuson Moss Act are the same as for a breach of warranty." *Tsirikos-Karapanos v. Ford Motor Co.*, 2017-Ohio-8487, 99 N.E.3d 1203, ¶ 20 (8th Dist.), quoting *Brown v. Cincyautos, Inc.*, S.D.Ohio No. 1:08cv372, 2009 U.S. Dist. LEXIS 82721, 16 (Sept. 8, 2009). "To have a valid claim under the Magnuson-Moss Act, a party first needs to sustain a claim for breach of an express or implied

warranty." *Id.*, citing *LaBonte v. Ford Motor Co.*, 8th Dist. Cuyahoga No. 74855, 1999 Ohio App. LEXIS 4795, 18 (Oct. 7, 1999). "To establish a breach of warranty, a party must show that a warranty and defect existed and that it afforded the warrantor a reasonable number of attempts to fix the defect." *Id.*, citing *Whitt v. Mazda Motor of Am., Inc.*, 5th Dist. Stark No. 2010CA00343, 2011-Ohio-30, ¶ 24.

{¶ 18} Therefore, Richard must prove that the vehicle was subject to a warranty and she afforded CarMax a reasonable number of attempts to fix the product. Defendant's exhibit C, which is the Buyer's Order signed by Richard, contains a Limited Warranty: the vehicle was covered by CarMax's Limited Warranty for 90 days or 4,000 miles, whichever comes first. Following the Limited Warranty is a Limitation of Warranties clause, which states: "CarMax makes no express warranties other than the limited warranty. To the extent permitted by law, any and all implied warranties, including the implied warranties of merchantability and fitness, applicable to the vehicle * * * are limited to the duration of the limited warranty."

{¶ 19} Thus, based on the trial exhibits included in the record before us, the only warranty the vehicle was subject to was the express limited warranty contained in the Buyer's Order. In the amended complaint, Richard alleged that she took the vehicle "to multiple mechanics within their network per the agreement" but did not allege that she took the vehicle to CarMax for repairs. Her trial exhibits included an invoice for repairs from Christian Brothers Automotive dated August 3, 2020, with an odometer reading of 77,784; an invoice from Mazda of Kent dated August 14,

2020, with an odometer reading of 78,741; and an invoice from Classic Westside Mazda dated September 24, 2020, with an odometer reading of 81,036. However, there are no trial exhibits reflecting that Richard brought her vehicle to CarMax for repairs under the limited warranty within the coverage period (before September 3, 2020 or 78,688 miles). In her appellate brief, Richard does not claim there was oral testimony at the trial establishing that she afforded CarMax a reasonable number of attempts to fix the problem within the coverage period of the limited warranty. In her reply brief, Richard alleges that she visited CarMax repairs shop on June 19, June 29, July 20, and July 25, 2020, but she fails to cite to portions of the record that would support the allegation. Based on the appellate record, Richard cannot prevail on her claim under the Magnuson-Moss Warranty Act.

{¶ 20} Richard alleges furthermore that there was a recall by Mazda for the power transfer unit and, when the vehicle transferred from the original owner to CarMax, CarMax was aware of it and was responsible for repairing the unit before selling the vehicle to her. She claims in her brief that the trial court "did not understand that the car is actually under recall by Mazda and the transfer case is and was covered by the recall."

{¶ 21} The record does not support Richard's claim. Plaintiff's exhibit No. 5 is a document relating to "SSP92." The document, titled "Parts and Warranty Information/SSP92," does not indicate there was a manufacturer's recall regarding the power transfer unit. Rather, the document contains a warranty extension: for certain eligible vehicles, the warranty for the power transfer unit was extended to

seven years from the original warranty start date or 90,000 miles, whichever comes first. The exhibits submitted by CarMax regarding the lack of any safety recalls at the time of the vehicle sale are consistent with the "SSP92" being a warranty extension rather than a safety recall. CarMax claims that, because Richard purchased the 2012 vehicle in 2020, the extended warranty expired a year before Richard acquired the vehicle. Richard does not refer us to any testimony at trial or to any exhibits introduced at trial to refute this claim.[4] Consequently, Richard's claim based on the SSP92 instituted by Mazda is without merit as well.

{¶ 22} For all the foregoing reasons, we affirm the judgment of the Bedford Municipal Court.

{¶ 23} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

---

[4] Richard alleges on appeal that a Mazda representative had informed her that the vehicle was under a recall for the power transfer unit. CarMax contends there is nothing in the record to substantiate the existence of the alleged conversation other than Richard's testimony. In her reply brief, Richard claims that an email from the Mazda representative supports the existence of the conversation. However, the alleged email is not part of the appellate record. More importantly, the statements made by the Mazda representative would be inadmissible hearsay, defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MICHAEL JOHN RYAN, J., CONCUR